# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MORGAN HELLER, <br> on behalf of herself and all other persons <br> similarly situated, known and unknown, <br><br> Plaintiff, <br><br> v. <br><br> CURALEAF HOLDINGS, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 22-cv-1617 <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Morgan Heller, on behalf of herself and all others similarly situated, known and unknown (the "Plaintiff Class"), complains against Defendant Curaleaf Holdings, Inc. for tip theft in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA"), and states:

## NATURE OF THE CASE

1. This is a hybrid collective action and class action for claims arising under the FLSA and IWPCA for Defendant's tip theft from Plaintiff and other similarly situated employees of Defendant.

2. Count I is brought as a Collective Action pursuant to the FLSA for tip theft. Plaintiff's Collective Action consent form is attached as Exhibit A.

3. Count II is brought as a Class Action pursuant to the IWPCA for tip theft.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question); 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

5. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1), (2) (venue generally) and 29 U.S.C. § 216(b) (FLSA).

1

## PARTIES

6. Plaintiff Morgan Heller is an individual and a citizen of Illinois.

7. Defendant Curaleaf Holdings, Inc., is an American cannabis company engaged in the production, distribution, and retail sale of cannabis products across North America with its principal offices in Wakefield, Massachusetts.

8. Defendant operates eight retail cannabis stores in Chicago and the surrounding suburbs.

9. Defendant acquired these retail cannabis stores from Grassroots Cannabis in approximately July 2020.

10. At all relevant times herein, Defendant employed Heller and the Plaintiff Class she seeks to represent and therefore meet the definition of "employers," as defined by the FLSA and IWPCA. 29 U.S.C. § 203(e)(1); 820 ILCS 115/2.

11. At all relevant times herein, Heller and the Plaintiff Class she seeks to represent, were current and former hourly employees who either currently work or worked for Defendant at their Northfield.

12. Heller and the Plaintiff Class regularly and consistently had earned tips taken from their pay.

## FACTS

13. Heller was employed by Defendant at its Curaleaf Dispensary located in Northbrook, Illinois from September 25, 2020, to October 28, 2021.

14. The Northbrook store was staffed by managers, "agents in charge," and hourly employees.

15. Upon information and belief, managers were salaried employees.

16. "Agents in charge" were hourly employees but had more responsibility than other hourly employees.

17. The store hours were 8:00 a.m. to 8:00 p.m. and the store was open seven days per week.

18. Hourly employees would be assigned to work one of four different eight-hour shifts:

   a. 6:30 a.m. to 3:00 p.m.;

   b. 7:30 a.m. to 4:00 p.m.;

   c. 10 a.m. to 6:30 p.m.; and

   d. 12:00 p.m. to close.

19. At peak store hours from midday to early evening, the store was staffed with approximately 25 hourly employees and 5 managers.

20. Hourly employees would either work on the sales floor assisting customers in the selection of cannabis products or work in the back packing products.

21. Hourly employees were not assigned to the front or back of the store exclusively during a shift and could do both during a single shift.

22. During her employment, Plaintiff worked both in the front of the store, on the sales floor assisting customers in the selection and purchase of cannabis products, and in the back of the store, stocking and packing product.

23. The Northbrook location typically had approximately ten hourly employees working on the sales floor during peak store hours.

24. At the same time, the store had, approximately, between fifteen and twenty other hourly employees working in the back packing products at peak store hours

25. Plaintiff worked approximately 32 – 40 hours per week.

26. Plaintiff earned sixteen dollars per hour.

27. In the first month of Plaintiff's employment, the store managers instructed employees they could not accept tips if customers offered them.

28. However, it is common in the industry for cannabis consumers to leave tips and customers at the Northbrook store left tips consistent with industry custom.

29. Despite management's directive, some store employees accepted the tips left by customers.

30. This resulted in disputes between management and employees regarding acceptance of tips and between all hourly employees regarding the division of tips.

31. As a result, after approximately one month, Curaleaf, through its managers, started permitting employees to accept tips in approximately October 2020.

32. After management started permitting employees to accept tips, it allowed the placement of a tip jar in the front of the store near the register into which customers could leave tips.

33. The understanding amongst the hourly employees was that tips would be divided amongst all hourly employees, not just those who worked in front or who directly helped the tipping customer.

34. However, the tips collected in the tip jar were instead confiscated at the end of each day by management, typically Roger Dillman or Nick Rekas, and not distributed amongst the hourly employees.

35. Heller was never permitted to keep any cash tips she received from customers and no tips were ever distributed by management to her or any other hourly employees.

36. Upon information and belief, the total cash tips confiscated by Defendant was, on average, between $350 and $600 dollars per day.

37. This daily confiscation of cash tips occurred from October 2020 to the end of Plaintiff's employment in October 2021.

38. As the store was open seven days per week, over the period of October 2020 to October 2021, Defendant's store managers confiscated approximately $126,000 and $216,000 of cash tips from the Northbrook store's hourly employees.

39. Defendant's policy or practice of confiscating Heller's and the Plaintiff Class's tips violates the FLSA, which set forth, in relevant part: (B) An employer may not keep tips received by its employees **for any purposes**, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit. 29 U.S.C.A. § 203(m)(2)(B) (emphasis added).

40. The applicable FLSA regulations, promulgated by the U.S. Department of Labor, define tips as: "(a) A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer." 29 C.F.R. § 531.52.

41. Likewise, the applicable FLSA regulations provide, in relevant part:

(b) Section 3(m)(2)(B) of the Act provides that an employer may not keep tips received by its employees for any purposes, regardless of whether the employer takes a tip credit.

> (1) An employer may exert control over an employee's tips only to distribute tips to the employee who received them, require employees to share tips with other employees in compliance with § 531.54, or, where the employer facilitates tip pooling by collecting and redistributing employees' tips, distribute tips to employees in a tip pool in compliance with § 531.54.
>
> (2) An employer may not allow managers and supervisors to keep any portion of an employee's tips, regardless of whether the employer takes a tip credit. A manager or supervisor may keep tips that he or she receives directly from customers based on the service that he or she directly and solely provides. For purposes of section 3(m)(2)(B), the term "manager" or "supervisor" shall mean any employee whose duties match those of an executive employee as described in § 541.100(a)(2) through (4) or § 541.101 of this chapter.

29 C.F.R. § 531.52 (emphasis added).

42. These tip theft practices/policies persisted through the end of Heller's employment.

43. Rather that provide the earned cash tips to employees as required by law, Curaleaf, through its agents and employees, hoarded the tip money and later, to get rid of the cash, used it to

5

purchase lunch for employees of the store.

44. Initially, management confiscated the tips and did not disburse them to employees or spend the money. However, this resulted in an increase in cash held within the store and to get rid of the cash, in October 2020 management started using the confiscated tips to purchase food for the store employees.

45. Employees who were not working the days food was purchased, or who worked certain time shifts would not be present, and therefore unable to receive the food purchased with money that was rightfully theirs.

46. The Curaleaf managers had so much confiscated tip money they regularly purchased excessive and wasteful amounts of food that was not even eaten, simply to reduce the amount of confiscated cash tips stored on the premises.

47. The practice of using confiscated tip money for food persisted until approximately September 2021 when managers began distributing the tip money as "lunch money" to employees each day in the amount of approximately twenty dollars.

48. Defendant only enacted this "lunch money" practice for approximately three days, before reverting to confiscating tips and using it to purchase food.

49. When Plaintiff first started and underwent employee training, Curaleaf, which was opening a store in Melrose Park, had Melrose Park employees undergo training at the Northbrook store.

50. Based on subsequent conversations with the Melrose Park employees she interacted with, management at that store also engaged in a similar confiscation of cash tips.

51. On information and belief, this practice of store managers confiscating tips was not confined to the Northbrook store, but rather, was companywide.

52. After Plaintiff ended her employment with Curaleaf, she continued to have contact

with employees who still worked at the Northbrook store. From these conversations Plaintiff learned that in January 2022, Defendant ended its policy of confiscating cash tips and started paying the tips out to hourly employees.

53. These employees receive between approximately $60 and $100 dollars in tips per week.

## Collective and Class Allegations

54. Heller and the Plaintiff Class seek to maintain this suit as a Collective pursuant to 29 U.S.C. §216(b) and as a Class pursuant to Fed. R. Civ. Pro. 23, on behalf of herself and all other nonexempt employees who were not fully compensated for all hours worked.

55. The foregoing allegations related to tip theft were applicable to all retail Curaleaf locations in Chicago and employees working for Defendant at those locations, to wit, the Plaintiff Class.

56. Upon information and belief, each store employed approximately 50 employees at any one time.

57. Over the course of Plaintiff's employment, the Northbrook location saw a high volume of employee turnover. On average 2-3 employees quit each month and were replaced by new hourly employees. In Plaintiff's last two months of employment five employees quit or were fired.

58. Heller and other similarly situated current and former employees in the class regularly had tips withheld from their pay, performed the same or similar work, held substantially the same job titles, and were victims of tip theft by Defendant.

59. With the number of class members impacted by Defendant's unlawful practices, a class action is the proper procedure for adjudicating such claims. Heller requests that the Court authorize and supervise notice to the members of the asserted classes so that all claims may be resolved efficiently in a single proceeding.

60. The records, if any, should be in the custody or control of Defendant concerning the

members of the asserted class and the compensation actually paid, or not paid, to such employees.

61. Heller will fairly and adequately protect the interests of each proposed class member and has retained counsel that is experienced in class actions and employment litigation.

62. Heller has no interest that is contrary to, or in conflict with, members of the class.

## COUNT I – FLSA
## TIP THEFT – COLLECTIVE ACTION

63. Paragraphs 1 – 62 are incorporated by reference herein.

64. This Count arises from Curaleaf's violation of the FLSA through its policy/practice of taking all cash tips earned by Heller and the Plaintiff Class.

65. The FLSA prohibits employers from keeping tips received by its employees, regardless of whether the employer takes a tip credit. 29 U.S.C.A. § 203(m)(2)(B);29 C.F.R. § 531.50.

66. Heller and Plaintiff Class are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b) in that Curaleaf subjected them all to the same tip theft policy.

67. The confiscation or theft of these earned and owed tips resulted in Heller and the Plaintiff Class rarely, if ever, being paid any of the tips owed to them pursuant to the FLSA.

68. Pursuant to 29 U.S.C. § 216(b), this action may be maintained by a plaintiff who has been damaged by a defendant's failure to comply with 29 U.S.C. §§ 206 – 207. Heller attaches as Exhibit A her Notices of Consent to Become a Party Plaintiff in a Collective Action under the FLSA.

69. All past and present hourly employees who have worked for Curaleaf in Illinois during the previous 3 years are similarly situated to Heller.

70. Curaleaf applied its compensation policies, which violate the FLSA, on a company-wide basis, including towards Heller.

71. Heller and the Plaintiff Class were engaged in job duties and responsibilities integral and indispensable to the operation of Curaleaf's business, and neither Heller nor any other member of the Plaintiff Class has received the full amount of value of the tips owed to them pursuant to the

FLSA.

72. Curaleaf's failure to pay Heller and the Plaintiff Class their tips owed to them pursuant to the FLSA is a willful violation of the Act, since Curaleaf's conduct shows that it either knew the conduct violated the FLSA or recklessly disregarded complying with the FLSA.

73. Heller's experiences are typical of the experiences of the putative class members.

74. For all members of the putative class to become fully aware of their right to join this cause of action, a certain period of time, as determined by this Court, is necessary to send notice to the entire Class, as well as certain additional time for those members to file consent forms with this Court as provided by 29 U.S.C. § 216(b).

75. The members of the Plaintiff Class who are still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

76. As a result of the tip theft, Heller and the Plaintiff Class suffered damages in the form of earned but unpaid tips.

WHEREFORE, Heller, on behalf of herself and all other similarly situated persons, known and unknown, respectfully requests that this Court enter an order as follows:

> A. Determining that this action may be maintained as a collective action pursuant to the FLSA;
>
> B. Awarding judgment for back pay equal to the amount of all unpaid wages for the three (3) years preceding the filing of this Complaint, according to the applicable statute of limitations for willful violations of the FLSA;
>
> C. Awarding liquidated damages in an amount equal to the amount of unpaid wages, to wit, unpaid tips, found due pursuant to the FLSA;
>
> D. Awarding prejudgment interest with respect to the amount of unpaid wages, to wit, unpaid tips;

E. Awarding reasonable attorneys' fees and costs incurred in filing this action;

F. Entering an injunction precluding Defendant from violating the FLSA; and

G. Ordering such other and further relief as the Court deems appropriate and just.

## COUNT II – IWPCA
## TIP THEFT – CLASS ACTION

77. Paragraphs 1-62 are incorporated by reference herein.

78. The IWPCA requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation. 820 Ill. Comp. Sta. 115/2.

79. Pursuant to the IWPCA, "(a) Gratuities to employees are the property of the employees, and employers shall not keep gratuities. Failure to pay gratuities owed to an employee more than 13 days after the end of the pay period in which such gratuities were earned constitutes a violation of this Act." 820 ILCS 115/4.1.

80. Curaleaf forced Heller and the Plaintiff Class to forfeit all tips earned, which Curaleaf then retained and spent.

81. Curaleaf's tip theft violated the IWPCA.

82. This action is brought as a class action under Fed. R. Civ. P. 23(b)(3) as the number of individuals who comprise the Plaintiff Class is so numerous that joinder of all Class members is impracticable. While the precise number of members of the Class has not been determined at this time, Plaintiffs believe Defendant has employed in excess of sixty (60) persons who have been subject to Curaleaf's common unlawful pay practices since it took over operation of the eight retail stores formerly owned and operated by Grassroots Cannabis in or about July 2020.

83. Heller and the Plaintiff Class have been equally affected by Curaleaf's tip theft.

84. The issues involved in this lawsuit present common questions of law and fact, which predominate over any variations that may exist between members of the Class.

85. Heller, the Plaintiff Class, and Curaleaf have a commonality of interest in the subject

matter and remedy sought.

86. The Plaintiff Class members who are still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

87. Heller is able to fairly and adequately represent and protect the interests of the members of the Plaintiff Class.

88. Plaintiff's Counsel is competent and experienced in litigating large wage and hour class and collective actions.

89. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the Plaintiff Class, to the Court, and Curaleaf. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Plaintiff Class is entitled.

90. As a result of this unlawful tip theft, Heller and the Plaintiff Class suffered damages in the form of lost wages.

WHEREFORE, Heller, on behalf of herself and all other similarly situated persons, known and unknown, respectfully requests that this Court enter an order as follows:

A. Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3);

B. Appointing Heller as Class Representatives and their Counsel as Class Counsel;

C. The amount of Plaintiffs' earned and unpaid wages, to wit, unpaid tips, in accordance with the IWPCA;

D. Statutory damages equivalent to the maximum statutory monthly interest penalties available pursuant to 820 ILCS 115/14;

E. Awarding reasonable attorneys' fees and costs incurred in filing this action; and

    F.   Ordering such other and further relief as the Court deems appropriate and just.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all claims.

                                      Respectfully submitted,

                                      */s/ Matthew Fletcher*
                                      One of Plaintiffs' Attorneys

Garfinkel Group, LLC
6252 N. Lincoln Avenue, Ste 200
Chicago, IL. 60659
Max Barack (IARDC No. 6312302)
max@garfinkelgroup.com
Matthew Fletcher (IARDC No. 6305931)
matthew@garfinkelgroup.com