IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MORGAN HELLER AND JOSHUA FLAVIN on behalf of themselves and all other parties similarly situated, known and unknown, <br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>CURALEAF HOLDINGS, INC.<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)　CASE NO.: 22-cv-1617<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO PARTIALLY DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**I.      INTRODUCTION**

Federal law—specifically the Fair Labor Standards Acts ("FLSA")—is the primary source of protection for employees who claim that an employer has improperly withheld wages. Only when state law provides protections beyond those offered by the FLSA may state law claims exist in parallel to their FLSA claims. Even then, those claims may only proceed when they conform to the requirements of the applicable state law.

Plaintiffs Morgan Heller, Joshua Flavin, Grace Baffoe, and Nick Fredrickson ("Plaintiffs") claim Defendant Curaleaf Holdings, Inc. ("Defendant" or "Curaleaf") violated the FLSA for allegedly withholding tips they received while working at Curaleaf's retail locations. Based upon the same alleged conduct, Plaintiffs contend Curaleaf has also violated Illinois, Massachusetts and Arizona law. Despite this being Plaintiffs' third bite at the apple, several of their claims must still fail.

Alongside her FLSA claim, Plaintiffs Heller ("Heller") and Baffoe ("Baffoe") allege Curaleaf violated section 4.1 of the Illinois Wage Payment and Collection Act ("IWPCA"), 820

ILCS 115/4.1 (hereinafter "Section 4.1").[1] The protections of the IWPCA, and the ability to assert a cause of action under the IWPCA, are predicated upon the existence of an *agreement* concerning compensation between employer and employee. Without such an agreement, no IWPCA claim may be asserted. Strikingly, Heller failed to allege any additional facts in her Second Amended Complaint to support her Section 4.1 claim. As such, Count II of the Second Amended Complaint (ECF 14), again fails as to Heller's IWPCA claim and should be dismissed with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), for two reasons. **First**, Section 4.1 is inapplicable to Heller's allegations because, like the IWPCA as a whole, its protections are limited to compensation governed by an *agreement* between the employer and the employee. No such agreement is alleged. **Second**, a broader reading of Section 4.1 would be preempted by the FLSA, which already provides the protections Plaintiffs are attempting to claim under Section 4.1.

In addition, Plaintiff Fredrickson ("Fredrickson") alleges Curaleaf violated Arizona law as well as the FLSA because "Arizona law holds as a general rule, tips are the property of the employee." (ECF 14, ¶ 184.) Plaintiffs rely solely on this unsupported statement to justify the existence of Fredrickson's claim and provide no statute, regulation, or common law to support the existence of an Arizona cause of action regarding his alleged tip theft. This is because none exist. Without a state law cause of action, Fredrickson's claim fails and should also be dismissed with prejudice, pursuant to Fed. R. Civ. P 12(b)(6).

---

[1] Plaintiff Baffoe also alleges a violation of Section 4.1. However, Heller and Baffoe's allegations have key differences that necessitate the dismissal of Heller's claim—indeed juxtaposing their respective allegations demonstrates why Heller's claims must fail. As will be discussed below, Heller has failed to allege the existence of agreement regarding how tips were handled at her location.

2

## II. RELEVANT FACTUAL ALLEGATIONS

The instant motion seeks only to dismiss Heller's IWPCA claim and Fredrickson's Arizona state law claim. As such, only the alleged facts relevant to Heller and Fredrickson's claims will be recounted.

### A. Plaintiff Heller's Allegations

Curaleaf is a cannabis company that operates retail dispensaries nationwide, including Illinois. (ECF 14, ¶¶ 14-19.) Heller alleges she worked at Curaleaf's Northbrook, IL retail location as an hourly employee from September 25, 2020 until October 28, 2021. (*Id.*, at ¶¶ 23, 32.) During her time with Curaleaf, she alleges she worked both front of house, assisting customers in the selection and purchase of cannabis products, as well as back of house, stocking and packaging product. (*Id.*, at ¶ 33.)

Heller alleges it is common in the cannabis industry for customers to leave tips. (*Id.*, at ¶ 38.) Despite this supposed custom, Heller alleges Curaleaf managers initially instructed employees not to accept tips. (*Id.*, at ¶ 39.) However, according to Heller, numerous Curaleaf employees ignored this directive and accepted tips from customers, resulting in disputes as to the non-tipping policy. (*Id.*, at ¶ 40.) Heller alleges that, as a result of these disputes, the Northbrook managers lifted the tipping ban approximately one month into Heller's tenure with Curaleaf. (*Id.*, at ¶ 42.)

This culminated in the placement of a tip jar near the register of the Northbrook location. (*Id.*, at ¶ 43.) Heller alleges that the understanding *among hourly employees* was that tips would be divided among all hourly employees—regardless of whether they were working front or back of house. (*Id.*, at ¶ 44.) According to Heller's allegations, such tips were consolidated at the end of each day by managers and were later used to buy lunches and snacks for the staff, but were not formally distributed among those employees. (*Id.*, at ¶ 45-46.)

Nothing in the facts alleged by Heller demonstrates there was an *agreement* between Heller and Curaleaf regarding the tips such that a cause of action under the IWPCA would arise. In fact, the alleged facts indicate there was no meeting of the minds as to whether tips were a part of the agreed-upon compensation or how tips were disbursed to employees. The allegations further indicate that tip disbursal methods changed over time at the unilateral discretion of Northbrook's managers, resulting in the Northbrook location utilizing various disbursement methods over time, including the purchasing of lunch for staff or granting of "lunch money." (*Id.*, at ¶¶ 53-56.) At no point in her allegations does Heller allege that the tips were personally kept by management.

  B.  **Plaintiff Fredrickson's Allegations**

Curaleaf also operates a dispensary in Phoenix, Arizona, where Fredrickson has been employed since May 2021. (*Id.*, at ¶¶ 121-22.) Contrary to the situation in Heller's allegations, Fredrickson's allegations are that employees at his location have always been permitted to receive and accept tips. (*Id.*, at ¶ 124.) Tips are received through tip jars placed near the register, never touched by hourly employees, and collected into a mandatory tip pool which is reported to Curaleaf corporate offices. (*Id.*, at ¶¶ 125-31.) According to Fredrickson, this tip pool is divided based on position and includes both hourly employees and management; however, new employees were ineligible to receive a portion of the tip pool during their first five shifts despite being required to contribute to the tip pool. (*Id.*, at ¶ 132-34.) Fredrickson further alleges that money collected as tips is used to balance out the safe and registers. (*Id.*, at ¶ 129.)

**III.**  **ARGUMENT**

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a short and plain statement of facts that states a claim for relief that is plausible on its face and that provides a defendant with fair notice of what claims are being brought against it and the grounds supporting such claims. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a valid complaint must show that the plaintiff is entitled to relief. *See EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Any claim must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### A. Section 4.1 of the IWPCA is Inapplicable Without an Agreement

As its title indicates, IWPCA provides for numerous worker protections in the area of wage payment, including that employees must be paid at least twice a month, 820 ILCS 115/3, be paid no later than 13 days following the pay period, *id*. at 115/4, and that deductions on employees' wages are prohibited unless certain conditions exist, *id*. at 115/9. Central to the IWPCA's protections though, is the concept that they are limited to protecting wages owed pursuant to *an agreement* between the employer and the employee. *Id.* at 115/2; *Chagoya v. City of Chicago*, 992 F.3d 607, 624 (7th Cir. 2021) ("the IWPCA holds the employer *only* to its promise under the employment agreement." (emphasis added)); *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 658 (N.D. Ill. 2012) ("The IWPCA therefore does not provide an independent right to payment of wages and benefits; instead, it only enforces the terms of an existing contract or agreement.").

Section 4.1 was added as part of the 2019 amendments to the IWPCA in order to expand the statute's protections to tips. Prior to the 2019 amendments, the IWPCA had never been held to provide a broad definition of wages, such that tips would be protected. *See, e.g.*, *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 569 (7th Cir. 2016). In relevant part, Section 4.1 provides that "[g]ratuities to employees are the property of the employees, and employers shall not keep

5

gratuities. Failure to pay gratuities owed to an employee more than 13 days after the end of the pay period in which such gratuities were earned constitutes a violation of this Act."

Section 4.1, however, is untested and there is no guidance on how these gratuity provisions are intended to be enforced. Nevertheless, the language of Section 4.1 mirrors the general wage provisions of the IWPCA and, by its most logical interpretation, simply and neatly folds gratuities into the bucket of wages protected by the IWPCA. *Compare* Section 4.1 *with* 820 ILCS 115/4 ("All wages earned by any employee . . . shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."). Moreover, the IWPCA's underlying definition of "wages" was not changed as part of the 2019 amendments. *See* 820 ILCS 115/2 ("'wages' shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties.") Indeed, the statutory provision allowing employees a private right of action under the IWPCA relates to *wages*, and provides that any "employee not timely paid wages . . . by his or her employer as required by this Act shall be entitled to recover . . . in a civil action . . . the amount of any such underpayments . . ." 820 ILCS § 115/14.

Nothing in the language of Section 4.1 indicates the scope of the protections offered by this section should be any different than the IWPCA generally. Section 4.1 does not specifically define "gratuity," and, most importantly to the tips at issue here, it does not state that its protections are intended to go beyond the scope of "wages" as contemplated by the IWPCA. Courts have consistently held the IWPCA requires only that employers pay their employees according to their agreements and to pay employees all earned "wages." *See* 820 ILCS 115/2, *supra*,; *see also, e.g.*, *Chagoya v. City of Chi.*, 992 F.3d 607 (7th Cir. 2021) (granting summary judgment for the city as there was no agreement between the parties regarding overtime compensation for certain

6

activities); *Hess v. Bresney*, 784 F.3d 1154 (7th Cir. 2015) (finding in favor of a law firm's non-payment of post-termination settlement fees where employment agreement provided only for bonuses following receipt of a certain amount of fee revenue). In other words, without more, an *agreement* as to the gratuities must exist in order for a cause of action under the IWPCA to arise.

Because the plain language of Section 4.1 does not expand the scope of the IWPCA, or the claims authorized thereunder, the protections regarding gratuity payments must be the same as the IWPCA generally. As such, Section 4.1 only adds gratuities under the umbrella of "wages" pursuant to the IWPCA—providing only that "[f]ailure to pay gratuities owed" *under an agreement* "to an employee more than 13 days after the end of the pay period in which such gratuities were earned constitutes a violation of this Act." IWPCA claims under Section 4.1, therefore, *must* rely upon on the agreements between employers and employees to carry the burden of determining these details, as all IWPCA claims must.

This interpretation of the statute is further supported by the structure of the IWPCA, which places the gratuity protection clause as Section 4.1—a subsection to the Section 4 protections over wages as a whole from which much of the pertinent language of Section 4.1 was lifted. This statutory structure indicates that it should be applied in a similar fashion. *See Nijhawan v. Holder*, 557 U.S. 29, 39 (2009) (finding that the structural relationship of two statutory subsections indicated the necessity of similar interpretations); s*ee also*, *e.g.*, *Matter of Lifschultz Fast Freight Corp.*, 63 F.3d 621, 628 (7th Cir. 1995) ("Statutory construction is a holistic endeavor and, at a minimum we must account for a statute's full text, language as well as punctuation, structure, and subject matter." (quoting *U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993)); *United States v. Lanier*, 520 U.S. 259, 267 (1997) ("[t]he legislative intent of Congress is to be derived from the language and structure of the statute itself").

Read within the IWPCA as a whole, the effect of Section 4.1 is *not* to provide blanket protection regarding any gratuities, but rather that tips may now be considered wages giving rise to a cause of action under the IWPCA *when there is an agreement regarding tips*, such as in the context of a restaurant or policy related thereto. Even given the broad interpretation of "agreement" under the IWPCA, *see* Ill. Admin. Code tit. 56, § 300.450 (defining "agreement"), the Second Amended Complaint alleges no such agreement with Heller or with any other employee working at the Northbrook location or in the form of a policy or guideline. Rather, the allegations point to the opposite—with the manner in which tips were allegedly handled shifting frequently over time and never establishing a meeting of the minds or past practice such that an agreement could be inferred. (*See* ECF 14 ¶¶ 41-45, 53-56.) At best, Heller's allegations describe a situation in which the hourly employees had an understanding *amongst themselves* as to how tips would be handled— but not between those employees and Curaleaf or its management. (*Id.*, at ¶44. ("The understanding amongst the hourly employees. . .").) In fact, Heller's allegations acknowledge Curaleaf's corporate policy was to not accept tips and subsequent deviations from this stance were done on an *ad hoc* basis in response to policy violations and not, as the IWPCA would require, according to an agreement. The allegations outline subsequent unilateral and frequent changes to how tips were handled which clearly runs contrary to the existence of an agreement. Accordingly, Section 4.1 and a claim under the IWPCA are inapplicable here as any received gratuities are not "owed" to Heller under an agreement with Defendant, as required by the IWPCA. Heller's IWPCA claim therefore fails and Count II should be partially dismissed as to Heller with prejudice under Rule 12(b)(6) as a matter of law.

### B. A Broader Reading of Section 4.1 Would be Preempted by the FLSA

Moreover, if Heller contends that no agreement is necessary to state an IWPCA claim under Section 4.1, then this section of the IWPCA is redundant of and pre-empted by the FLSA. Conflict

preemption occurs when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *California v. ARC Am. Corp.*, 490 U.S. 93, 100-01, (1989). "[T]he purpose of Congress is the ultimate touchstone of preemption analysis[,]" *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981), although conflict pre-emption does not require "a specific, formal agency statement identifying conflict in order to conclude that such a conflict in fact exists." *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 884 (2000). Here, such conflict may exist.

Congress's intent in passing the FLSA was to protect workers from unfair working conditions and receiving inadequate pay. *See* 29 U.S.C. § 202(a); *see also Barrentine v. Arkansas—Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). To facilitate Congress's intention that employees receive gratuity payments, the FLSA grants employees a private right of action under the FLSA to recover illegally withheld tips. 29 U.S.C. §§ 216(b), 203(m)(2)(B); 29 C.F.R. § 531.50. The FLSA also has a complex enforcement scheme with exclusive remedies that pre-empt redundant state law claims as the FLSA's own enforcement scheme would no longer be needed. *See, e.g.*, *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868 (5th Cir. 2021); *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193 (4th Cir. 2007); *Roman v. Maietta Constr.*, 147 F.3d 71 (1st Cir. 1998); *see also Mitchell v. JCG Indus.*, 745 F.3d 837, 838 (7th Cir. 2014) (finding the FLSA did not preempt state law when a state law "is more generous to employees").

As discussed above, the IWPCA generally goes beyond the protections offered by the FLSA to provide standards employers must abide by when paying employees—establishing, for example, a minimum number of payments each month and a maximum number of days that an employer has to pay their employee. But most importantly, it provides employees with the power of a statute to enforce agreements concerning compensation between employers and employees. *Supra*. The IWPCA and FLSA are generally *not* redundant because, in some respects, the IWPCA

provides more protection than the FLSA. As such, the IWPCA as a whole is not preempted. *See* 29 U.S.C. § 218(a) (the FLSA's "savings clause" gives precedence to state laws with more generous compensation).

Critically though, these additional protections require that wages are governed by an agreement between the employer and the employee. *Supra*; *see also Balmes v. Ill. Bell Tel. Co.*, No. 15 C 2685, 2016 U.S. Dist. LEXIS 33339, at *18 (N.D. Ill. Mar. 15, 2016) ("Unlike the IMWL and the FLSA, which require employers to pay employees a minimum wage and to pay time and a half for overtime work no matter what, the IWPCA requires only that employers pay their employees whatever they agreed to pay them.").

Here, to the extent Heller seeks to enforce Section 4.1 absent an agreement, such a claim is duplicative of Plaintiff's FLSA claim as the protections Heller seeks are already provided by the FLSA. In doing so, she would detach Section 4.1 from the rest of the statute, picking and choosing which portions of the IWPCA apply to Section 4.1 (the protections and, likely, damage provisions) and which portions do not (the requirement of an agreement). Reading Section 4.1 in isolation from the rest of the IWPCA goes beyond what is contemplated by the statute and would provide general protection for any impropriety concerning withheld tips—regardless of whether an agreement existed. This is the role of the FLSA, and such a claim is duplicative and redundant of Plaintiffs' Count I, because such protections are already offered by that federal statute.

Thus, to the extent Heller contends no agreement is required to state a claim under Section 4.1, such a claim should be dismissed as it would be preempted by the FLSA. *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 795 (N.D. Ill. 2010) ("It is well-settled that duplicative counts in a complaint may be properly dismissed.").

    **C.    Neither the Arizona Wage Act, Nor Any Other Arizona Law or Regulation, Provides a Cause of Action on Which Fredrickson Can Rely**

In Count III of Plaintiff's Second Amended Complaint, Fredrickson alleges Curaleaf violated Arizona State Law by including management-level employees in a tip pool and by stealing tips from employees—either through use of tips to balance store registers or by requiring new hires to participate in the tip pool while they were ineligible to receive any distribution. (ECF 14, ¶¶ 186-88.) Plaintiffs cite to no specific law, regulation, or case law to support these claims, instead relying on their assertion that "Arizona law holds that as a general rule, tips are the property of the employee." (*Id*., at ¶ 184.) Count III seems to be based on the Arizona Wage Act, which Plaintiffs identify as the controlling law. However no such cause of action exists under the Arizona Wage Act. In fact, the Arizona Wage Act provides for no protection over tips relevant here, and the only mention of tips in the Arizona Wage Act is that they are not included in the definition of "Minimum Wage." Ariz. Rev. Stat. § 23-350.

Expanding this further, no such cause of action appears to exist anywhere under Arizona law. In fact, there are numerous instances in which Arizona's wage laws avoid providing protections for tips. Arizona's employment security laws, for example, mention that wages are specifically defined to *not include* "any tip, gratuity, or service charge . . . except . . . if it is reported by the employee in writing to the employer . . . ." Ariz. Rev. Stat. § 23-622(B)(9); *see also* Ariz. Rev. Stat. § 23-362(E) (again defining "Wage" as not including tips or gratuities). Arizona's Administrative Code Rule regarding tip credits does discuss what constitutes a permissible tip pool, but only in the context of employees for whom an employer is taking a tip credit—which has not been alleged here as Curaleaf does not take a tip credit for any of their employees. *See* Ariz. Admin. Code R20-5-1207.

As the foregoing demonstrates, Arizona's legislature is cognizant of the existence of tips and gratuities. Its exclusion of them throughout state law proves it could establish protections beyond those provided for under the FLSA if it so chose. Were the Arizona legislature's intent that unpaid tips be defined as unpaid wages (for which treble damages are available as Count III claims), it would have explicitly done so. Instead, it has done the opposite and omitted tips from the definition of wages time and time again, leaving the protection of Arizona's tipped employees to the FLSA's broad tipping protections and regulations.

In support of their Count III, Plaintiffs have restated a general principle that underlies these FLSA protections—that tips are the property of a tipped employee—and framed it a state law that doesn't exist. But without a viable cause of action, Fredrickson's state law claim is not plausible. *See*, *e.g.*, *Vice v. Grifols Inc.,* No. CV-13-02590, 2014 WL 9858715, at *3 (D. Ariz. Aug. 5, 2014) (standing for the general proposition that federal courts do not recognize causes of actions not recognized by state courts or cognizable under state statute or common law); *see also Bell v. Hood*, 327 U.S. 678, 682 (1946) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits . . . ."). As such, Fredrickson's Arizona state law claim must fail and Count III should be dismissed with prejudice under Rule 12(b)(6) as a matter of law.

## IV. CONCLUSION

Heller continues to fail to state a viable claim under Section 4.1 of the IWPCA because she has alleged no agreement between herself and Curaleaf concerning the alleged tips—the allegations of her co-Plaintiff do not apply to her and do not save her claim. Even were Heller's IWPCA claim viable, the legal theory upon which she based her claim would cause Section 4.1 to be in conflict with federal law such that it would be preempted. Beyond this, Fredrickson's state law claim is unfounded as Arizona state law provides no cause of action for the allegations he has put forth. Consequently, Heller and Fredrickson's state law claims must be dismissed, and Curaleaf

respectfully requests the Court enter an order partially dismissing with prejudice Count II and fully dismissing with prejudice Count III of Plaintiffs' Second Amended Complaint.

Date: August 22, 2022											Respectfully Submitted,

BARNES & THORNBURG LLP

*/s/ Mark W. Wallin*
Mark W. Wallin
One N. Wacker Dr., Suite 4400
Chicago, IL 60606
mark.wallin@btlaw.com
Phone: (312) 214-4591
Fax: (312) 759-5646

Benjamin S. Perry
201 S. Main Street, Suite 400
South Bend, IN 46601
Benjamin.Perry@btlaw.com
Phone: (574) 237-1239

*Attorneys for Defendant,
Curaleaf Holdings, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the August 22, 2022, I electronically filed *Memorandum in Support of Defendant's Motion to Partially Dismiss Plaintiffs' Complaint* with the Clerk of the Court using CM/ECF System. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

                                            */s/ Mark W. Wallin*
                                            Mark W. Wallin