IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MORGAN HELLER, JOSHUA FLAVIN, GRACE BAFFOE, and NICK FREDRICKSON, on behalf of themselves and all other persons similarly situated, known and unknown, )))))) | |
| Plaintiff, )) | |
| v. ) | Case No. 22-cv-1617 |
| CURALEAF HOLDINGS, INC., )) | Hon. Mary M. Rowland |
| Defendant. )) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

It is a basic tenet of law that a court, in ruling on a motion to dismiss, must accept as true all well-pleaded facts in the complaint and make all reasonable factual inferences in favor of the plaintiff. Defendant's Motion to Dismiss asks this Court to do just the opposite. Defendant's Motion asks this Court to ignore half of Plaintiffs' well-pleaded facts, make factual inferences against the Plaintiffs, and ignore the law. This Court should deny Defendant's Motion to Dismiss for the reasons stated below:

**PROCEDURAL HISTORY**

Plaintiff Morgan Heller filed suit on March 28, 2022, alleging collective and class action claims for tip theft on behalf of all Illinois Curaleaf employees, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA"). See ECF Dkt. No. 1. Subsequently, Plaintiff's counsel filed a First Amended Complaint on April 20, 2022, adding a new Plaintiff, Josh Flavin, and expanding the FLSA claim to allege a nationwide collective action claim on behalf of all hourly Curaleaf employees, in addition to the IWPCA class claim. See ECF Dkt. No. 6. Defendant appeared and filed a motion to dismiss the IWPCA class claim on June 28, 2022. See ECF Dkt. Nos. 9-11. In response, Plaintiff elected to file an amended complaint pursuant Fed. R. Civ. P. 15 and filed its Second Amended Complaint on July 19,

1

2022. See ECF Dkt. No. 14. The Second Amended Complaint added an additional Illinois named Plaintiff, Grace Baffoe, and an Arizona Plaintiff, Nick Fredrickson. *Id.* It also added class claims under the Massachusetts Wage Act and Arizona Wage Act, M.G.L. c. 149, § 148 and Ariz. Rev. Stat. Ann. § 23-355, respectively. *Id.* Defendant's response was to re-file substantially the same motion to dismiss the IWPCA claim, while also seeking to dismiss the newly added Arizona Wage Act claim. See ECF Dkt. Nos. 18-20.

## STANDARD OF LAW

To survive a motion to dismiss, a complaint must contain "sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts reviewing a motion to dismiss pursuant to Rule 12(b)(6), "'construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor.'" *Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). A court will grant a motion to dismiss only if the plaintiff cannot prevail under *any* set of facts that could be proven consistent with the allegations. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

## ARGUMENT

### I. The Pleaded Facts Sufficiently Allege an Agreement as Required by the IWPCA

Reading Defendant's Motion, one might question whether the Second Amended Complaint is merely a figment of the imagination. The Motion quite simply ignores Plaintiff Baffoe's factual allegations, which also support Count II, the IWPCA tip theft class claim. Defendant's Motion should be denied as to Count II, as it ignores myriad well-pleaded facts, and asks this Court to interpret the facts in the light most favorable to Defendant and against the Plaintiffs.

2

Heller worked at Defendant's dispensary located in Northbrook, Illinois ("Northbrook Dispensary") between September 25, 2020 and October 28, 2021. See ECF Dkt. No. 14, ¶ 23. Heller alleged that at the Northbrook Dispensary, in approximately October 2020, management began permitting employees to accept tips following a dispute between management and employees regarding the acceptance of tips. *Id.* at ¶¶ 41-42. Plaintiffs alleged, further, that management also permitted the placement of a tip jar near the cash register to collect tips, the logical inference and interpretation of those facts in the light most favorable to the Plaintiffs, being that the tips collected in that jar would later be divided up amongst the hourly employees. *Id.* at ¶ 43. Heller's and the other hourly employees' understanding was that tips would be divided equally amongst all hourly employees. *Id.* at ¶ 44. The reasonable inference derived from Paragraphs 43 and 44 is that by placing the tip jar, management was agreeing to: (1) collect the tips; and (2) divide them equally amongst all hourly employees. Thus, it is quite reasonable to infer from the pleaded facts that management and the workers agreed to a tip collection and distribution plan. Instead, management confiscated the collected tips and never paid them out. *Id.* at ¶ 46. It is further alleged that a similar scheme occurred at the Melrose Park Dispensary. *Id.* at ¶ 58.

The IWPCA does not require an agreement that meets the formal requirements of a contract to be enforceable. The applicable regulations defining an "agreement" provide, in relevant part: "An agreement may be reached by the parties without the formalities and accompanying legal protections of a contract **and may be manifested by words or by any other conduct**, such as past practice." Ill. Admin. Code tit. 56, § 300.450 (emphasis added). Here, the agreement is evidenced by conduct, Northbrook management permitting placement of a tip jar by the register and management's active role in collecting the tips from that jar at the end of each day. See ECF Dkt. No. 14 ¶ 43. It is also evidenced by the verbal agreement with employees as alleged in Paragraph 43 of the Second Amended Complaint.

3

Even assuming, arguendo, that a more explicit "agreement" is required for employees' tips to become their property,[1] such an agreement is found in the Baffoe factual allegations as to the Skokie Dispensary. The Baffoe facts as to Curaleaf's Skokie Dispensary show both a clear agreement between management and workers to pay tips, and a clear violation of that agreement. Initially, as alleged in the Second Amended Complaint, the Skokie Dispensary's management confiscated all tips received for use in a "take-a-penny leave-a-penny" slush fund. See Dkt. No. 14, at ¶ 74. However, on or about May 17, 2021, management announced that $1,542 of tip money, far less than what Baffoe estimates was actually collected, would be distributed to employees. *Id.* at ¶¶ 75-76. It was further promised that going forward tips would be paid out to employees monthly. *Id.* After the May 17, 2021 announcement, management instead used collected tips to buy store supplies and balance registers. *Id.* at ¶ 78. Further, the promised tip payout of even the paltry $1,542 amount never materialized. *Id.* at ¶ 79. Management then unilaterally changed the promised tip payout to a quarterly payout, and again failed to pay out the tips as promised. *Id.* at ¶¶ 80, 82. It is further alleged that management consistently underreported, whether due to greed or incompetence, the amount of tip money collected. *Id.* at ¶¶ 76, 89, and 97.

Baffoe's facts, which Curaleaf's Motion fails altogether to address, sufficiently allege a clear agreement between the Skokie Dispensary's management and its employees to collect and distribute received tips, which management consistently violated. Both Heller's and Baffoe's facts, read separately, plead a cause of action under the IWPCA. Read as a whole, their facts provide more than sufficient factual support to adequately plead a cause of action under the IWPCA.

---

[1] Plaintiffs dispute that such an explicit agreement is required under the law and were this Court to require same, the result would be antithetical to the plain language of Section 4.1 of the IWPCA, would violate federal law (the FLSA), and would result in a perverse outcome whereby employees' tips are theirs only if employers agree to let them keep them,

4

**II.     Section 4.1 of the Wage Act Does Not Require an Agreement and Does Not Preempt the FLSA Because it Provides More Generous Compensation**

As Defendant's Motion acknowledges, Section 4.1 of the IWPCA specifically provides tips are the property of employees who receive them. 820 ILCS 115/4.1; see ECF Dkt. No. 19, pg. 5-6. Here, Plaintiffs alleged that Northbrook and Skokie Dispensary employees received tips, management collected those tips, and then management did not distribute the collected tips to employees at either Dispensary, including Heller and Baffoe. See Dkt. No. 14, ¶¶ 42 – 46.

Plaintiff disagrees with Defendant's conclusion that Section 4.1 of the IWPCA requires an agreement between employer and employee to be enforceable under the Act. The statute states, in relevant part:

> (a)Gratuities to employees are the property of the employees, and employers shall not keep gratuities. Failure to pay gratuities owed to an employee more than 13 days after the end of the pay period in which such gratuities were earned constitutes a violation of this Act.

820 ILCS 115/4.1(a). The Illinois Legislature has seen fit, through the inclusion of a special section of the IWPCA, to codify that employees own their tips and employers cannot keep them. Section 4.1 functions as the agreement between employer and employee and specifically states that any failure to pay gratuities is a violation of the Act. Defendant's interpretation of Section 4.1 as requiring an agreement is unsupported by any Illinois appellate authority. Further, as Defendant's Motion admits, the FLSA's savings clause gives precedence to state laws with more generous compensation. See Dkt. No. 19, pg. 10. Here, the IWPCA provides interest at a rate of 5% per month on any unpaid wages. 820 ILCS 115/14. It is likely that by the time this case reaches trial, the IWPCA's interest penalties will eclipse the FLSA's liquidated damages. Finally, unlike the FLSA's liquidated damages, the monthly interest penalties imposed by Illinois law on failure to pay wages have been held not to be punitive in nature. See e.g., *Reynoso v. Motel LLC*, 2014 WL 5392034, at *6 (N.D. Ill. Oct. 21, 2014) (holding the Illinois Minimum Wage Act's monthly interest penalty could be recovered in addition to the FLSA's

liquidated damages because the interest penalty was not punitive in nature). The IWPCA imposes a similar interest penalty, which like the IMWL but unlike the FLSA does not require a showing of bad faith on the part of the employer. Thus, Plaintiffs would see for themselves and all other similarly situated Illinois employees of Defendant both FLSA liquidated damages and IWPCA interest penalties on Defendant's tip theft.

### III. The Arizona Wage Act Provides Fredrickson with a Vehicle for his Tip Theft Claim.

Count III alleges a claim for basic wage theft under Arizona's Wage Act. It alleges that Fredrickson and other Curaleaf employees were promised payment of their received tips through a tip pool. It is reasonable to infer that Fredrickson and his fellow employees were promised that the tip pool would comply with all applicable laws. However, Curaleaf instead implemented an illegal tip pool wherein ineligible managers received a cut of the tips. This resulted in Fredrickson and other employees being paid less tips than they would have received in the promised legal tip pool. Further, Curaleaf management simply stole tips outright and used the money to balance its registers. See ECF Dkt. No. 14, ¶ 129.

> Arizona's Wage Act defines "wages" as
>
> > nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation.

Ariz. Rev. Stat. Ann. § 23-350. The Arizona Wage Act provides employees whose employers have failed to pay wages due to an employee with a civil cause of action against the employer. See. Ariz. Rev. Stat. Ann. § 23-355. Prevailing employees may recover treble damages. *Id.* The tips which management coopted or stole was wages due to Fredrickson and others and thus the failure by Curaleaf to pay those wages to Fredrickson and his coworkers violated the Arizona Wage Act. Defendant cites no case holding that the Arizona Wage Act's definition of tips in §23-350 omits tips. Accordingly, Count III should stand.

6

## CONCLUSION

Defendant's Motion to Dismiss fails to establish that these counts could be proven under *any* set of facts, as is required to prevail on a 12(b)(6) motion to dismiss. See *Forseth*, 199 F.3d at 368. Defendant's Motion as to Plaintiffs' IWPCA claim mischaracterizes that count as only being supported by Plaintiff Heller's factual allegations and ignores Grace Baffoe's allegations. It seeks to have this Court read Heller's allegations in such a way as to infer facts against Plaintiff. Lastly, Defendant ignores the plain language of Section 4.1 of the IWPCA. With respect to the Arizona Wage Act claim, it again asks this Court to read Fredrickson's allegations so narrowly as to draw inferences against Fredrickson. Defendant's Motion to Dismiss should accordingly be denied.

Respectfully submitted,

*/s/ Matthew Fletcher*
One of Plaintiffs' Attorneys

Garfinkel Group, LLC
6252 N. Lincoln Avenue, Ste 200
Chicago, IL. 60659
Max Barack (IARDC No. 6312302)
max@garfinkelgroup.com
Matthew Fletcher (IARDC No. 6305931)
matthew@garfinkelgroup.com

7