IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MORGAN HELLER, JOSHUA FLAVIN, GRACE BAFFOE, and NICK FREDRICKSON, on behalf of themselves and all other persons similarly situated, known and unknown, <br><br>　　　　　　Plaintiff, <br><br>v. <br><br>CURALEAF HOLDINGS, INC., <br><br>　　　　　　Defendant. | Case No. 22-cv-1617 |

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND ISSUANCE OF NOTICE PURSUANT TO § 216(b) OF THE FLSA**

Plaintiffs bring this case on behalf of themselves, and all other hourly employees of Defendant, Curaleaf Holdings, Inc. ("Curaleaf"). As set forth in the Second Amended Complaint, Defendant illegally failed to pay and/or withheld some or all of Plaintiffs' and the Collective members' earned tips, in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §201, *et seq.* and the Illinois, Arizona, and Massachusetts Wage Acts.[1] Plaintiffs now move this Court for an order granting conditional certification and issuance of Court-approved notice pursuant to §216(b) of the FLSA, informing the opt-in collective of their right to opt into this case, as to their FLSA claims, as follows:

> All persons who have been employed as hourly employees by Defendant, at any time between March 28, 2019 and the present. This includes both current and former hourly Curaleaf employees, who work or have worked at any of the Defendant's 147 retail dispensaries within the statutory period, three years prior to the date of the filing of this action through to the date of judgment, who were not fully compensated with payment of earned tips.

Plaintiffs have satisfied the lenient evidentiary burden required to grant conditional certification and issuance of notice pursuant to 29 U.S.C. § 216(b), which will allow other current and former Curaleaf employees to decide whether to opt-into this lawsuit. Courts nationwide recognize that the standard

---

[1] 820 ILCS 115/1, *et seq.*, Ariz. Rev. Stat. Ann. § 23-355, and M.G.L. c. 149, § 148.

1

for issuing notice is quite lenient, requiring plaintiffs to make just a minimal showing that similarly situated individuals exist who should be informed of the lawsuit.

## FACTS RELEVANT TO CONDITIONAL CERTIFICATION

Defendant Curaleaf is a vertically integrated cannabis company, operating over one hundred retail dispensaries across the United States, with its headquarters in Wakefield Massachusetts.[2]. Curaleaf operates ten, five, and thirteen cannabis dispensaries in Illinois, Massachusetts, and Arizona, respectively. *Id.* at ¶¶ 15-18. Curaleaf dispensaries are not franchised, but rather, are directly owned and operated by Defendant. *Id.* Plaintiffs, and the Collective and Subclasses of individuals they seek to represent, all worked or work for Defendant as hourly employees and were subject to tip illegal theft by Defendant in that their earned tips were: (1) withheld completely; (2) not fully paid; (3) the subject of illegal tip pooling; or (4) all of the above. See ECF Dkt. No. 14. All the foregoing pay practices were committed in violation of the FLSA. 29 U.S.C. §§ 203, 206.

Defendant operates its dispensaries under a unified ownership, and corporate organizational hierarchy. Defendant's website advertises how Curaleaf operates in 21 states, with 147 local dispensaries, and that it employs approximately 6,000 employees, nationwide. *Id.* Defendant likewise advertises for career opportunities on one single webpage, which encourages applicants to apply to work as "Team Members," depicting a uniformity in its management, describing, "Our valued Team Members are diverse, dedicated, and driven to achieve the highest possible standards in all that we do."[3] Indeed, an applicant to any specific store need only visit Curaleaf's "careers" website page to apply to any of its stores.[4]

---

[2] At the time of filing the Second Amended Complaint Curaleaf operated 134 dispensaries. According to its website it now operates 142 dispensaries (https://curaleaf.com/about-curaleaf), though according to its investor relations page it operates 147 dispensaries
(https://ir.curaleaf.com/?_gl=1*14n4igd*_ga*MTk1OTk3MzkzNS4xNjc1MjAyMDYw*_ga_GQFXFXVMF Q*MTY3NTIwMjA2MS4xLjEuMTY3NTIwMjE0OS42MC4wLjA.)
[3] https://curaleaf.com/careers (Last visited 1/31/23).
[4] Id.

This unified ownership and control is also evident from the common policies and procedures that Defendant has implemented across all its stores during the relevant time frame. The Plaintiffs' various sworn declarations demonstrate a series of uniform policies utilized by Defendant throughout its dispensaries across the country. Plaintiffs' declarations detail their knowledge of other stores within their geographic area operating under the same policies as the stores at which the Plaintiffs worked. For example, the Skokie dispensary's policies were similar to those utilized by Morris and Deerfield. See Ex. E, Baffoe decl., ¶ 3. Likewise, the Melrose Park and Northfield dispensaries utilized common policies. See Ex. E, Heller decl., ¶ 4. The various Massachusetts dispensaries operated under the same set of policies and procedures. See Ex. E, Flavin decl., ¶ 11. The Arizona dispensaries also operated under similar policies and procedures with respect to tips. See Ex. E, Fredrickson decl., ¶ 15. Defendant utilized the same timekeeping app called "Wurk" to track employee time at both the Northfield and Skokie dispensaries. See Ex. E, Heller decl., ¶ 5; Ex. E, Baffoe Decl., ¶ 4.

Read in a vacuum, these facts might lead one to conclude only that different regions operated under different polices. However, Curaleaf issued to Baffoe and Fredrickson identical handbooks, Exhibit C, and identical tip policy, Exhibit D, with effective dates of November 1, 2020, and February 1, 2022, respectively. See Ex. E, Baffoe decl., ¶¶ 3, 22; Fredrickson decl., ¶¶ 9, 15. It is therefore reasonable to infer that the common policies and procedures observed in each region by each Plaintiff were in fact identical across all regions going back at least as far as November 1, 2020, despite no one Plaintiff having direct personal knowledge of operations in two different states or regions.

In addition to using identical policies to operate and manage its dispensaries, Curaleaf employees underwent common, collective training, including employees from stores other than those where the named plaintiffs worked. For instance, Melrose Park Curaleaf employees trained with Heller at the Northbrook location where she worked. See Ex. E, Heller decl., ¶ 3. Baffoe trained at the Deerfield and Morris Curaleaf dispensaries before working at Skokie. See Ex. E, Baffoe decl., ¶ 2.

3

Defendant engaged in illegal tip theft nationwide. This theft took many forms and was not limited to any one store or state. Plaintiff Heller's sworn declaration confirms she observed:

> 8. At the Northbrook dispensary, customers regularly tipped product specialists at the completion of sales.
>
> 9. In October 2020, Northbrook dispensary management started permitting employees to accept tips and authorized the placement of a tip jar near the point of sale.
>
> 10. The understanding, based on the statements of dispensary management, was that tips collected would be divided evenly amongst all hourly employees.
>
> 11. However, dispensary management instead confiscated tips, which typically ranged from $350 - $600 per day, and started using the confiscated tip money to purchase lunches for dispensary employees.

Ex. E, Heller decl. ¶¶ 8-11. Heller learned, from talking with other Melrose Park employees, that Melrose Park management confiscated employee tips, like management at the Northbrook dispensary. See Ex. E, Heller decl. ¶ 13.;.

Likewise, Baffoe, while in training at the Deerfield and Morris dispensaries, personally observed management confiscate tips from employees in a similar manner to what she later experienced working at the Skokie dispensary:.

> 5. In training at the Morris and Deerfield dispensaries, I observed dispensary management also engage in tip theft by confiscating tips received by employees which management justified by stating the tips were being donated to charity.
>
> 6. Based on my observations while training, Cuarleaf's tip theft was not limited to the Skokie dispensary.
>
> 7. After training, I worked at the Skokie dispensary.
>
> [….]
>
> 11. At the Skokie dispensary, customers regularly tipped product specialists at the completion of sales.
>
> 12. Skokie management confiscated this tip money and used it for a "take a penny leave a penny" fund which was used if customers were short money to make a purchase, sometimes as much as $5 per transaction.

Ex. E, ¶¶ 5-7; 11-12.

4

Joshua Flavin also has personal knowledge that other Massachusetts dispensary operated, with respect to tips, in the same manner as his dispensary. Ex. E, Flavin decl. ¶ 11. Flavin's dispensary management confiscated all tips received by hourly employees prior to November 2021 and donated them to charity. *Id.* at ¶¶ 4-6. After November 2021, Curaleaf changed its policy to permit employees to keep the tips that were by law theirs already. *Id.* at ¶ 7. However, the amounts distributed in the new tip pooling policy post-November 2021 by hourly employees did not add up to what was being collected in tips and then remitted to Curaleaf for division and distribution. *Id.* at ¶¶ 8-10.

The Arizona dispensaries were, upon information and belief, acquired by Curaleaf and had pre-existing tip policies that Curaleaf left in place. This policy was uniform across other Arizona stores besides the Midtown dispensary where Fredrickson worked. Ex. E, Fredrickson decl., ¶ 15. Employees were permitted to accept tips. *Id.* at ¶ 4. At the end of each day, tips, which are collected in tip jars near the point-of-sale, are illegally used to balance registers and the dispensary safe. *Id.* at ¶¶ 5-7. The remaining money is then divided amongst hourly employees, but new hourly employees in their first five shifts must remit tips but do not receive a portion of the tip pool. *Id.* at ¶¶ 8, 10. Additionally, managers, specifically leads (which Curaleaf has classified as management for purposes of collective bargaining) and assistant managers, receive money from the tip pool. *Id.* at ¶¶ 10, 12-14. What is consistent across all of these stores and states is that however it effectuated this outcome, Curaleaf did not permit their employees to retain all of the tips they were paid, had earned, and were owed under the FLSA.

Curaleaf's managers used a variety of sometimes overlapping methods to spend the confiscated tip money:

(1) forced charitable donations at the Deerfield, IL, Morris, IL and Oxford, MA dispensaries, ECF Dkt. 14. at ¶¶ 68 and 109; Ex. E, Baffoe decl., ¶ 5; Flavin decl., ¶ 6;

(2) register balancing slush fund at Skokie, IL and Midtown, AZ dispensaries, *id.* at ¶¶ 78, 129-30); Ex. E, Baffoe decl., ¶ 16; Fredrickson decl., ¶ 7;

5

(3) take a penny, leave a penny slush fund at Skokie, IL *id.* at ¶¶ 72-73; Ex. E, Baffoe decl., ¶ 12; and

(4) employee lunches at Northbrook and Skokie, IL dispensaries, *id.* at ¶¶ 54-56); Ex. E, Heller decl., ¶ 11; Baffoe decl., ¶ 13.

Plaintiffs' declarations, provided in support of this Motion, echo the allegations in the Second Amended Complaint.

Additionally, Curaleaf's own uniformly disseminated and applied tip policy contains an illegal provision, the effect of which was to steal tips from certain employees. Section 5.0 of the Tipping Pool Overview and Procedures provides, in pertinent part, that, "Employees must be active on payroll at the time of payout." See Ex. D. The policy makes clear that tips collected are the policy are remitted to Curaleaf who then counts the money, calculates each hourly employee's amount of tips owed, and then pays that amount, less any applicable withholding, on the next pay period. See Ex. D, § 6.0. For example, an employee terminated in the middle of a pay period, having worked a full week, would have earned tips, surrendered them to the tip pool in reliance on being paid his or her share, but then not received that portion of their final paycheck pursuant to Curaleaf's latest tip policy. While the FLSA does not require <u>immediate</u> payment of a final paycheck, it does require payment of the final paycheck.

## STANDARD OF LAW

Courts in this district routinely follow a two-step class certification process in FLSA cases. *See Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010) ("While the Seventh Circuit has yet to address how a district court should manage collective actions, the majority of courts ... have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action.") (internal citation omitted); *Smith v. Family Video Movie Club, Inc.*, 2012 WL 580775, at *2 (N.D. Ill. 2012) ("The court also notes that the Seventh Circuit has recognized that district courts employ the two-step process and has not indicated that the process was improper."). "At the initial step of

6

the certification process, the plaintiffs are required 'only to make a minimal showing that others in the potential class are similarly situated.'" *Smith*, 2012 WL 580775, at *2) (quoting *Jirak v. Abbott Laboratories, Inc.,* 566 F.Supp.2d 845, 847 (N.D. Ill. 2008)). "If the plaintiff meets that minimal showing, the class is conditionally certified and notice is sent to potential class members, giving them an opportunity to opt in." *Id.* It is only at the second stage in the process, "'which occurs after the parties have engaged in discovery and the opt-in process is completed, the court's inquiry is more stringent' and 'the Court must reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis.'" *Id.* at *2 (*quoting Jirak,* 566 F.Supp.2d at 847).

"At the first step, 'a named plaintiff can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Anyere v. Wells Fargo, Co.*, 2010 WL 1542180, at *1 (N.D. Ill. 2010) (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). This "modest factual showing" is not a high bar. *Id.* at *2 ("Courts have interpreted the 'similarly situated' requirement of this first step leniently."); see also *Allen v. City of Chicago*, 2013 WL 146389, at *3 (N.D. Ill. Jan. 14, 2013) ("In the first stage, courts employ a lenient interpretation of the term similarly situated, and require only a minimal showing of similarity.") (internal citation omitted). A "modest factual showing," can be established using declarations, declarations, deposition testimony, or any other documents. *Anyere v. Wells Fargo, Co.*, 2010 WL 1542180, at *2 (N.D. Ill. 2010) (*quoting Molina v. First Line Solutions LLC,* 566 F.Supp.2d 770, 786 (N.D.Ill.2007). Thus, "Plaintiffs do not have to show that the potential class members have *identical* positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay." *Jirak*, 566 F.Supp.2d at 848-49 (emphasis in original).

"[T]he court's role at this stage is not to assess any party's credibility," so that the evidence proffered by Plaintiff will be taken as true. *Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930, 935, n. 3 (N.D. Ill. 2008); see also *Shiner v. Select Comfort Corp.*, 2009 WL 4884166, *3 (N.D. Ill. 2009) ("[A]t this stage of the collective action process, the Court must accept as true [plaintiff]'s description of his own day-to-day duties, which two other store managers corroborated, even if those duties were somewhat belied by the job descriptions that Defendants presented."). Thus, courts do not determine the merits of a case or evaluate the applicability of defenses at the conditional certification stage. *Marshall v. Amsted Industries, Inc.*, 2010 WL 2404340, *3 (S.D. Ill. 2010) ("Conditional certification does not entail the district court adjudicating the *merits* of plaintiffs' claims. It is simply a finding that the claims are similarly situated enough to proceed as a collective action.").

## ARGUMENT

It is vital that notice of the collective be promptly issued to preserve the proposed collective members' rights. Unlike with class claims brought under Fed. R. Civ. P. 23, the statute of limitations for claims brought under the FLSA are not tolled for each employee until she has opted into the action. See 29 U.S.C. § 216(b); *Ruffin v. Entm't of the E. Panhandle*, 2012 WL 28192, at *2 (N.D.W. Va. 2012) ("By statute, the limitations period for an opt-in plaintiff continues to run until the plaintiff files a written consent to join the action.") (citation omitted). Thus, because of this feature of an FLSA collective action, many courts have identified a sense of urgency in ordering conditional certification. *See, e.g., Nash v. CVS Caremark Corp.*, 683 F.Supp.2d 195, 200 (D.R.I. 2010) (noting that "[t]he longer it takes for an FLSA class to mature, the lower members' damages will be once they opt-in, given the two-year limitations period [of FLSA overtime claims]"); *Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007) ("Prompt court action is needed because potential opt-in plaintiffs' claims are in risk of being extinguished by the running of the statute of limitations."). Plaintiffs submit that therefore, before this case goes any further, all of Defendants' hourly employees should be

8

notified of their right to opt into the case because the statute of limitations continues to run on their FLSA claims.

I. **Plaintiffs Have Met their Burden of a Modest Factual Showing that a Class of Similarly Situated Individuals Exists.**

Plaintiffs have met the requisite factual showing that "there are similarly situated employees who are potential claimants." *Russell*, 575 F. Supp. 2d at 933 (citing *Mielke v. Laidlaw Transit, Inc.*, 313 F.Supp.2d 759, 762 (N.D. Ill. 2004)). This is a "lenient" standard which "typically results in 'conditional certification . . .'" *Smallwood*, 710 F. Supp. 2d at 750, 752, n. 4 (internal quotation marks and citation omitted). At this stage, "Plaintiff[] only need[s] to make a minimal showing that others in the potential class are similarly situated." *Mielke*, 313 F.Supp.2d at 762.

Here, the facts show that Curaleaf employees nationwide were and are similarly situated in that they were subject to similar policies resulting in the common end of tip theft. Further, after the implementation by Curaleaf of its Tipping Pool Overview and Procedures policy in February 2022, Curaleaf employees were subject to a uniform policy which also included an unlawful tip theft mechanism affecting those employees separated from Curaleaf in the middle of a pay period.

Each Plaintiff detailed that all hourly employees at the stores where they worked were impacted by Defendants' tip practices. Through conversations with employees at other stores, Plaintiffs learned that these tip practices were applied consistently across the regions or districts in which their stores were situated.

Evidence of a company-wide policy that is alleged to violate the FLSA is a sufficient basis for conditional certification. See, e.g., *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 360 (W.D. Wis. 2014); *Betancourt v. Maxim Healthcare Services, Inc.*, 2011 WL 1548964, *8 (N.D. Ill. 2011) ("plaintiff has shown that defendant has a company-wide policy or plan of not paying overtime compensation to Recruiters in its Maxim Staffing division"); *Petersen v. Marsh USA, LLC*, 2010 WL 5423734, *5 (N.D. Ill. 2010); *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 631 (W.D. Wis. 2009) ("plaintiffs have made a 'modest

9

factual showing' that defendant had a company- wide policy of paying certain sales representatives on commission only and that all sales representatives had the same general job duties"); *Heckler v. DK Funding, LLC*, 502 F.Supp.2d 777, 780-81 (N.D. Ill. 2007). Here, the 2022 Tipping Pool Overview and Procedures Policy is just that, a common policy. It was implemented nationwide, as evidenced by Fredrickson and Baffoe both being issued a copy of, and being paid pursuant to that policy at their respective dispensaries. See Ex. E, Baffoe decl., ¶¶ 3, 22; Fredrickson decl., ¶¶ 9, 15. Further, prior to the implementation of that policy, Curaleaf's policy, generally, was that employees could not keep tips they received, despite the law viewing tips as employees' property. This policy was implemented in various ways from store to store. In Massachusetts and Illinois, multiple Plaintiffs have represented, under oath, that there was confiscation and forced charitable donation of tips. Ex. E, Baffoe decl., ¶ 5; Flavin decl., ¶ 6 In Illinois and Arizona, management used tips to balance the store's registers. Ex. E, Baffoe decl., ¶ 16; Fredrickson decl., ¶ 7 And in multiple Illinois stores management used confiscated tips as a petty cash slush fund for the dispensary to buy lunches. Ex. E, Heller decl., ¶ 11; Baffoe decl., ¶ 13.

The fact that there were variations in how each store went about stealing and justifying its theft of employee tips prior to 2022 is not sufficient to defeat conditional certification. The common key fact was that Curaleaf, through various means, stole employee tips from members of the collective. *Olmsted v. Residential Plus Mortg. Corp.*, 2008 U.S. Dist. LEXIS 99106, at *8 (N.D. Ill. 2008) (conditionally certifying class of receptionists, loan processors and loan consultants who alleged they were misclassified as exempt and stating, "conditional certification may be appropriate even if differences exist between their job titles, functions or pay."); *Allen v. City of Chicago*, 2013 WL 146389, at *3 (N.D. Ill. Jan. 14, 2013) ("In the first stage, courts employ a lenient interpretation of the term similarly situated, and require only a minimal showing of similarity.") (internal citation omitted).

Plaintiffs' declarations demonstrate that they, and by extension, all their hourly coworkers, were subject to similar unlawful pay practices, to wit, tip theft. Like barbeque, Curaleaf's tip theft as alleged in the Second Amended Complaint, had certain regional flavors. Barbeque, be it Carolina, Memphis, Kansas City, or Texas, is at basic slow-cooked meat and similarly, whether Curaleaf's managers were stealing tips outright, confiscating and donating tips to charity, or using the tips to buy lunches, it is at basic tip theft... "Plaintiffs need not provide conclusive support, but they must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." *Molina*, 566 F. Supp. 2d at 786. Other courts have found the amount of evidence proffered by Plaintiff sufficient to grant conditional certification and allow notice to issue. *Fang v. Zhuang*, 2010 WL 5261197, at *3 (E.D .N.Y. 2010) ("Although plaintiff only corroborates his allegations with his own declaration, courts ... have found this adequate for conditional certification"); *Iriarte v. Redwood Deli & Catering, Inc.*, 2008 WL 2622929, at *3 (E.D. N.Y. 2008) (conditionally certifying a class where the lone "plaintiff has presented evidence, in the form of his own affidavit and defendant's discovery responses, indicating that he and other plaintiffs did not receive the wages to which they were entitled by law"); *Khalil v. Original Homestead Rest.*, 2007 WL 7142139, at *1 (S.D. N.Y. 2007) (granting conditional class certification based on the pleadings, one affidavit, and a consent-to-sue form); Olmsted, 2008 WL 5157973, at *1 (granting conditional certification based on modest factual showing in the form of "affidavits of Plaintiff and two other potential class members, all of whom state that they were denied overtime pay").

Lastly, this matter is especially well suited to collective adjudication as Defendants treated their hourly employees identically with respect to their tip policy as evidenced by the uniform switch in January 2022 to payment of tips via hourly employees' normal payroll checks. Smallwood, 710 F. Supp. 2d at 752 (N.D. Ill. 2010) ("A common policy or plan appears to exist because on May 16, 2009,

all OSP Engineers were uniformly reclassified as non-exempt employees, making them eligible for overtime payments."); Petersen, 2010 WL 5423734 (N.D. Ill. 2010) ("[T]he March 2010 reclassification of Consulting Analysts and Actuarial Analysts to non-exempt status provides some evidence of a common policy affecting plaintiffs and putative notice recipients.").

## II.     The Proposed Notice is Proper

Plaintiff asks the Court to authorize the issuance of notice to all individuals who have worked for Defendants as hourly employees, from March 28, 2019 to the present. Plaintiff's proposed notice form, attached as Exhibit A, is "timely, accurate and informative." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989). District courts generally approve specific notice in FLSA cases, and the Court should do so here as well. See, e.g., *Rottman*, 735 F.Supp.2d at 994 ("Plaintiffs' proposed notice is also authorized, subject to the modifications explained above."); *Kelly*, 256 F.R.D. at 632 ("I will authorize distribution of the modified notice by first class mail. I have attached a copy of the notice to this order."). Notice serves the FLSA's "broad" and "remedial" purpose (*Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 42 (1st Cir. 1999)), and the form and content of a §216(b) notice should maximize participation. Otherwise, potentially meritorious claims will diminish or expire. *See, e.g., Smallwood*, 710 F.Supp.2d at 753 ("the FLSA statute of limitations continues to run on each individual's claim prior to the filing of their written consent to join the action."). A proposed Opt-In Form for members of the potential collective action to fill out and return is attached as Exhibit B. The time period in the proposed class definition is appropriate. In approving the three-year period contemplated in plaintiffs' notice, the court in *Frebes v. Mask Restaurants, LLC*, 2014 WL 1848461, *4 (N.D. Ill. 2014), reasoned that "because there is not a high bar for giving notice under the three-year statute of limitations, we will apply a three-year statute of limitations at this stage in the litigation." "Whether defendants violated the FLSA and whether any such violations were willful are questions pertaining to the merits of this action and are not properly entertained at this early stage of the proceeding. At this stage of

litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs." *Espenscheid v. DirectSat USA, LLC*, 2010 WL 2330309, *13 (W.D. Wis. 2010); *North v. Bd. of Trs. of Ill. State Univ.*, 676 F.Supp.2d 690, 696 n.8 (C.D. Ill. 2009) (courts can assume willfulness at the notice stage). In this case, where six different Plaintiffs experienced near-identical unpaid overtime violations and can describe, in detail, the existence of numerous other individuals similarly affected, both currently employed by Defendants and otherwise, the Defendant was clearly on notice of potential FLSA violations, and a three-year notice period is appropriate.

Defendants should also be ordered to produce a list of the potential opt-in plaintiffs' names, last-known mailing addresses, telephone numbers, email addresses, and dates of employment. See *Hoffman-LaRoche*, 493 U.S. at 170 (holding that district courts have the authority to compel the production of contact information of employees for purposes of facilitating notice in FLSA collective actions). Courts generally require defendants to produce this information when granting conditional certification motions. See *Sylvester v. Wintrust Financial Corp.*, 2013 WL 5433593, *6 (N.D. Ill. 2013) ("the defendants should produce the names, unique employee ID numbers, addresses, and telephone numbers of all potential opt-in class members to the plaintiffs' counsel."); *Nehmelman v. Penn Nat. Gaming*, Inc., 822 F.Supp.2d 745,767 (N.D. Ill. 2011) (ordering defendants to provide "names, addresses, email addresses and telephone numbers" for potential opt-ins to plaintiffs); *Acevedo v. Ace Coffee Bar*, 248 F.R.D. 550, 554-55 (N.D. Ill. 2008) ("Due process requires an opportunity to discover this information at the present stage of litigation, and such due process rights are more compelling than the privacy rights of potential plaintiffs' addresses and phone numbers.").

The Court should also allow Plaintiffs to send notice to class members by email, text message, and U.S. Mail. See *Espenscheid*, 2010 WL 2330309, *14 ("With respect to email notification, some courts, including this one, have allowed email distribution of notice forms for FLSA collective actions.") (collecting cases). This process "advances the remedial purpose of the FLSA, because

13

service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate." See *Atkinson v. TeleTech Holdings, Inc.*, 2015 WL 853234, at *5 (S.D. Ohio 2015). "Courts have recognized that notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." *Calvillo v. Bull Rogers*, Inc., --- F. Supp. 3d ---, 2017 WL 3172843, at *6 (D.N.M. 2017). "With regard to the use of email to notify potential plaintiffs of this litigation, 'communication through email is [now] the norm.'" *Butler v. DirectSat USA, LLC*, 876 F.Supp.2d 560, 575 (D. Md. 2012) (quoting *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. 2012)); see also *Vaughn v. Rescue Rangers LLC*, 3:15-cv-0056-JAG, Dkt. 30, p. 1 (Order granting conditional certification) (E.D. Va. Jan. 13, 2016) (ordering Defendants to produce contact information, including e-mail addresses, for potential plaintiffs); *Gerges v. Enterprise Systems Software, LLC*, 3:15-cv-01816-JZ, Dkt. 19, p. 2 (Order approving Stipulation for Conditional Certification) (N.D. Ohio 2015) (Defendants are to provide spreadsheet with contact information, including e-mails, for potential plaintiffs).

The 120-day opt-in period requested by Plaintiff is proper. "Courts in this circuit have approved opt-in periods ranging from 45 to 120 days." *Nehmelman*, 822 F.Supp.2d at 764. Important considerations favoring a longer opt-in period are high turnover among workers, necessitating additional investigation to contact plaintiffs (*Anyere*, 2010 WL 1542180 at *4); and "widespread geographic dispersal" of the class (*Espenscheid*, 2010 WL 2330309 at *13). In this case, there is high turnover for Defendants, and widespread geographic dispersal – Defendant operates up to 147 retail stores across 21 states, rendering proper the 120-day opt-in period requested by Plaintiff.

Finally, the Court should also authorize a reminder notice to be sent during the opt-in period. Courts have routinely authorized such reminder notices. See, e.g., *Boltinghouse v. Abbott Labs., Inc.*, 2016 WL 3940096, at *5 (N.D. Ill. 2016) (finding that sending a reminder notice "is reasonable" and

"authoriz[ing] Plaintiffs to send one reminder notice to any potential opt-in plaintiff who has not replied 15 days prior to the end of the opt-in period"); *Knox v. Jones Grp.*, 2016 WL 4943825, at *8 (S.D. Ind. 2016), on reconsideration in part, 2016 WL 6083526 (S.D. Ind. 2016) (noting that "[t]he Court is unconvinced that any harm will result from potential class members being informed of their rights twice. Deadline reminders are commonplace and will not appear to endorse the merits of the case. Therefore, Plaintiffs' request to send a reminder notice is approved"); *Soto v. Wings 'R US Romeoville, Inc.*, 2016 WL 4701444, at *9 (N.D. Ill. 2016) (approving "Plaintiff's request to send a reminder email to all potential opt-in plaintiffs halfway through the [] notice period"); *Swarthout v. Ryla Teleservices, Inc.*, 2011 WL 6152347, at *5 (N.D. Ind. 2011) (granting the use of one reminder letter).

## CONCLUSION

Plaintiffs have amply shown that notice under §216(b) should be authorized in this case. Defendants' support staff should be given notice of this case and the opportunity to opt in to join it. Accordingly, Plaintiffs respectfully request that this Court:

1. Conditionally certify this action as a collective action under 29 U.S.C. §216(b);
2. Order that notice be issued to all support staff who have worked for Defendants during the last three years. Proposed Notice and Opt-In forms are attached hereto as Exhibits A and B.

Respectfully submitted,

*/s/ Matthew Fletcher*
One of the attorneys for Plaintiff

Max P. Barack (ARDC No. 6312302)
Matthew Fletcher (ARDC No. 6305931)
Garfinkel Group, LLC
701 N. Milwaukee Avenue, The CIVITAS
Chicago IL 60642
312-736-7991
matthew@garfinkelgroup.com
max@garfinkelgroup.com