IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MORGAN HELLER, JOSHUA FLAVIN, GRACE BAFFOE, and NICK FREDRICKSON, on behalf of themselves and all other persons similarly situated, known and unknown, <br><br>    Plaintiffs, <br><br>v. <br><br>CURALEAF HOLDINGS, INC., <br><br>    Defendant. | Case No. 22-cv-1617 <br><br> Hon. Judge Nancy Maldonado <br><br> Hon. Mag. Judge Maria Valdez |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CONDITIONAL CERTIFICATION**

Plaintiffs, by and through their attorneys, the Garfinkel Group, LLC, submit the following reply in support of their Motion for Conditional Certification:

**ARGUMENT**

This Court should grant Plaintiffs' Motion for Conditional Certification as Plaintiffs have met the low evidentiary threshold for granting such relief. Plaintiffs have demonstrated the existence of a company-wide practice or policy of failure to pay all tips as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), based on both the sworn statements of the Plaintiffs themselves and Defendants' own discovery responses. Defendant's Response to Plaintiffs' Motion for Conditional Certification argues for a heightened, intermediate standard of scrutiny for assessing whether to grant conditional certification, but even if such a standard is appropriate, which it is not, Plaintiffs' have met the burden for conditional certification. *See generally* ECF Dkt. # 39. The declarations in support of Defendant's Response are self-serving and contradictory. Two affiants claim Curaleaf had no policy regarding tips prior to February 2022 while two others state the company did have a policy, to wit, employees could not accept tips. Finally, and most importantly, Curaleaf's arguments as to the lack of a common policy ignore the existence of a common practice: Curaleaf's acceptance of, and continued

1

implementation of existing tip policies at stores it acquired, regardless of whether those policies were legal under the FLSA. Curaleaf's Response essentially admits it was completely indifferent, when acquiring stores, to whether policies at stores it acquired were legal and tacitly approved of those policies, resulting in a common harm, tip theft, to a common class of its hourly employees.

## ARGUMENT

**A.    A Lenient Standard for Assessing the Similarly Situated Requirement is Appropriate.**

Contrary to Defendant's assertions, The bar for conditional certification, particularly at this stage in the litigation, is extremely low. See *Smith v. Family Video Movie Club, Inc.*, 2012 WL 580775, at *2 (N.D. Ill. 2012). At this stage in the litigation, Plaintiffs' obligation is only to make a 'minimal showing '"that others in the potential class are similarly situated."' *Smith*, 2012 WL 580775, at *2 (quoting *Jirak v. Abbott Laboratories, Inc.,* 566 F.Supp.2d 845, 847 (N.D. Ill. 2008)). The Plaintiffs only need to clear a "low bar" to meet their burden and establish the propriety of this case for conditional certification and issuance of notice. *Rottman v. Old Second Bancorp, Inc.*, 735 F.Supp.2d 988, 990 (N.D. Ill. 2010) (finding that the similarly situated standard is a liberal one, which "typically results in conditional certification" of a collective) (citation omitted); *Howard v. Securitas Security Services, USA Inc.*, 2009 WL 140126, at *5 (N.D. Ill. 2009) ("[T]he court looks for no more than a 'minimal showing' of similarity."); *Allen v. City of Chicago*, 2013 WL 146389, at *3 (N.D. Ill. Jan. 14, 2013) ("In the first stage, courts employ a lenient interpretation of the term similarly situated, and require only a minimal showing of similarity.") (internal citation omitted). A "modest factual showing," can be established using affidavits, declarations, deposition testimony, or any other documents. *Anyere*, 2010 WL 1542180, at *2 (*quoting Molina v. First Line Solutions LLC,* 566 F.Supp.2d 770, 786 (N.D.Ill.2007). As the Plaintiff has met this evidentiary standard, this collective should be certified.

Both cases cited by Defendant to support their request for an intermediate standard of scrutiny are factually distinct from the present case such that the Court should afford them little weight. The

*Steger* case involved a motion for class certification after significant discovery had occurred. This included written discovery, upward of twenty depositions and a Rule 30(b)(6) deposition. See 14-cv-06056, ECF Dkt Nos. 62 and 65. The discovery focused entirely on the issue of class certification and discovery on the issue was complete. See 14-cv-06056, ECF Dkt No. 65. Thus, an intermediate standard was appropriate there.

In the second case cited by Defendant to support their request for an intermediate standard of scrutiny, *Bunyan v. Spectrum Brands, Inc.*, the court made clear: (1) plaintiffs are not required to prove the merits of their claim at either stage of certification; and (2) the concern is whether certification will aid litigation in light of § 216(b)'s fundamental purposes of lowering costs and limiting controversies to one proceeding. 07-cv-0089-MJR, 2008 WL 2959932 at *3 (S.D. Ill. July 31, 2008). While that case also involved application of an intermediate standard, the facts again are distinguishable. In *Bunyan*, he parties had not only completed written discovery, exchanged "a large number of documents," including a list of other employees with the same title as the named plaintiffs, but also conducted depositions. See *Bunyan* at *4-5.

In contrast to *Steger* and *Bunyan*, in the present case, the parties have completed only some written discovery and document production, while Plaintiffs' supplemental discovery targeted to identifying the number of stores acquired by Curaleaf as opposed to organically opened, remains unanswered. Accordingly, this Court should apply a lenient standard of scrutiny to Plaintiffs' Motion for Conditional Certification.

  B. **Even Under Defendant's Requested Intermediate Standard of Scrutiny, Plaintiff's Motion Should be Granted.**

Conditional certification is still appropriate, even under an intermediate standard of scrutiny, and requires only "a modest factual showing that there is a group of <u>potentially</u> similarly situated plaintiffs that may be discovered by sending opt-in notices." *Steger v. Life Time Fitness, Inc.*, 14-CV-6056, 2016 WL 245899, at *2 (N.D. Ill. Jan. 21, 2016) (emphasis added). Defendant cites *Steger* to support

the imposition of an "intermediate standard" but neglects any attempt to apply the three factors articulated in *Steger* to be analyzed to assess whether a group is potentially similarly situated: (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns.

Here, the plaintiffs and the putative collective they seek to represent are all hourly employees whose job duties, titles, and governing employee handbooks are all nearly identical. All the named Plaintiffs were or are employed as product specialists. See ECF Dkt No. 30, Ex. E, Baffoe Decl. ¶ 3 and Fredrickson Decl. ¶ 15. All worked on the sales floor assisting customers with retail purchase of cannabis and completing point-of-sale transactions. *Id.* at Ex. E, Baffoe Aff ¶ 9, Flavin Decl. ¶¶ 3, 9, Fredrickson Decl. ¶ 2-3; Heller Decl. ¶¶ 6-7. And as evidenced by Baffoe and Fredrickson's declarations, Curaleaf's employees nationwide were issued the same employee handbook and therefore subject to the same corporate rules and hierarchy. See ECF Dkt. No. 30, Ex. E, . This satisfies the first factor. The second factor is moot as Defendant has not advanced any affirmative defenses. The third factor, fairness and procedural concerns weighs in favor of Plaintiffs. As noted below, Defendant has a distinct information advantage over Plaintiff at this stage. It also potentially benefits from any further delay in certification whereas the putative class members likely do not benefit. Fairness should dictate in favor of conditional certification now.

Further, the Court in *Steger* made sure to note that in evaluating a motion for conditional certification where some limited discovery has been completed, the court must still keep in mind that the defendants still have greater access to evidence than the plaintiffs, so plaintiffs' showing "need not be conclusive." *Id.* This is particularly true here. Plaintiffs do not concede that tip theft was isolated only to those stores acquired by Curaleaf – particularly as Plaintiff's supplemental discovery on this topic issued on [date] is still outstanding. However, even assuming this is true, Defendant has far

4

greater access to evidence as to the practices and policies at each individual store it operated during the relevant period. Plaintiffs' have provided declarations detailing their knowledge of what occurred at their stores, and other stores where they trained or with whose employees they commiserated about Curaleaf's tip theft. Further, other Curaleaf employees have come forward and indicated they were victims of tip theft as alleged in the First Amended Complaint and signed Collective Action Opt-In forms during the pendency of this litigation, adding further support for Conditional Certification under either a lenient or intermediate standard. See ECF Dkt. Nos. 33 and 34.

      **C.     Plaintiffs have Provided Sufficient Evidence to show that They and Collective they Seek to Represent are Similarly Situated.**

The facts contained in the declarations supporting Plaintiffs' Motion are neither mere conclusions, nor inadmissible evidence, as mischaracterized by Defendants. For example, Plaintiff Baffoe stated that she personally observed confiscation of tips by store management at the stores where she trained, Morris and Deerfield. See ECF Dkt. No. 30, Ex E, Baffoe Affidavit, ¶ 5. She then worked at Skokie and observed management confiscate tips at that location as well. *Id.* at ¶ 12. Baffoe described a dispensary hierarchy identical to that described by Fredrickson in his declarations. Compare Ex. E, Baffoe Affidavit, ¶¶ 9-10 and Fredrickson Affidavit ¶¶ 2-3. Baffoe underwent training at two other dispensaries where she observed confiscation of tips. Ex. E, Baffoe Affidavit ¶ 5. These are statements based on firsthand observations, not hearsay. And while Fredrickson's declaration is admittedly ambiguous as to whether he simply heard others discuss tip theft at other store locations while engaged in unionization, it is also possible he personally observed activities similar to the illegal activities observed at his own store. See Ex. E, Fredrickson Decl. ¶¶ 15-16.

Similarly, Plaintiffs Baffoe, Heller, and Fredrickson describe their title, duties, and responsibilities in near identical terms. Compare Ex. E, Baffoe Affidavit ¶ 9, Fredrickson Affidavit ¶ 2, and Heller Affidavit ¶ 6. Critically, the "similarly situated" analysis does not focus on the amount of tip theft experienced by each potential plaintiff, or the exact mechanism of tip theft, but rather, on

the similarities between the potential plaintiffs' duties, titles, and responsibilities. *See Pfahler v. Consultants for Architects, Inc.*, 2000 WL 198888, 2000 U.S. Dist. LEXIS 1772 (N.D. Ill. Feb. 8, 2000); see also *Persin v. CareerBuilder, LLC*, 2005 WL 3159684 (N.D. Ill. Nov. 23, 2005) ("[plaintiff] has alleged that he and other account managers and representatives share some fundamental employment characteristics that extend beyond job titles. This is a sufficient basis to allow [the court] to authorize notice of the lawsuit to putative collection action plaintiffs"). Plaintiffs were or are all product specialists paid hourly who worked on the retail side of their dispensaries. See ECF Dkt. No. 30, Ex. E. They seek to represent a class of putative plaintiffs who likewise were paid hourly and worked on the retail side of dispensary operations. See ECF Dkt. No. 30. This satisfies the "similarly-situated" analysis.

      Defendant also is critical that Plaintiffs do not state when the tip theft occurred, how many times it happened, or how much was stolen, and argues that its own, self-serving declarations prove Plaintiffs claims are false. This argument improperly seeks to have this Court require that Plaintiffs prove their claims at this stage of the case and make credibility determinations as to which party's declarations are to be believed. The law is clear that Plaintiffs need not prove their case at the conditional certification stage. See *Curless v. Great American Real Food Fast*, 280 F.R.D. 429, 433 (S.D. Ill. 2012) ("at this stage, the Court does not resolve factual disputes, decide substantive issues going to the merits or make credibility determinations.'"). *Marshall v. Amsted Indus., Inc.*, 2010 WL 2404340, at *3 (S.D. Ill. 2010) (unreported) ("Conditional certification does not entail the district court adjudicating the merits of plaintiffs' claims. It is simply a finding that the claims are similarly situated enough to proceed as a collective action Saunders v. Getchell Agency, 2014 WL 580153, *7 (D. Me. 2014). Plaintiffs all state they were recipients of tips and that they were not paid some or all of those tips due to actions by Defendant and its agents. See Plaintiffs' Affidavits, generally.

Defendants take it a step further, and essentially ask this Court to weigh their declarations against Defendants as to the merits of the claims themselves. See ECF Dkt. No. 39, fn 5. Again, it is not for the Court to resolve factual disputes or decide substantive issues or make credibility assessments, merely to determine whether Plaintiff has made a modest factual showing that there are potentially other similarly situated individuals. See *Steger* and *Curless* supra.

D. **The Common Practice Violating the FLSA is Curaleaf's Failure to Ensure Existing Tip Policies in Acquired Stores were Legal.**

Defendant's claim that the company did not have a common tip policy prior to February 2022, and that this lack of a written policy somehow absolves it and prevents any showing of commonality. See ECF Dkt, is also meritless and contradicted by its own witness declarations. No. 39, p.10-11. This position is contradicted by three of Curaleaf's own declarations – those of Cole, Cox, and Dillman, who all state Curaleaf did have a common policy prior to February 2022 that "tips should not be accepted." See ECF Dkt. No. 39, Attachments 1, 2, and 4, Declaration of Carly Cole, ¶ 8, Declaration of Keevin Cox, ¶ 6, and Declaration of Roger Dillman, ¶ 6. Curaleaf's declarations further describe a common practice with respect to tips: that when it acquired stores with existing tip policies in place, Curaleaf left those tip policies in place, regardless of the policies' legality. *Id.* at Attachment 2, Cox Decl. ¶ 7-8 and Attachment 5, Holstein Decl. ¶ 6. In short, the common practice with respect to tips was blind adoption of existing tip policies, even ones that were illegal. The common result of these policies and practices was that employees at an unknown number of dispensaries nationwide were victims of tip theft implicitly authorized by Curaleaf, the new owner and operator of those dispensaries.

While further discovery is necessary to prove the exact number of Curaleaf dispensaries engaged in tip theft, the number of employees impacted by this theft, and the amount of tips stolen, it does not, as Defendant disingenuously claims, require an "individual inquiry" such that certification

is improper. Further, such exacting proof is, as stated above, not required at this stage of conditional certification.

E. **Defendant's Jurisdictional Argument is Untimely and Does not Bear on Whether to Grant Conditional Certification.**

Preliminarily, Plaintiff notes that this case was originally filed as a class and collective action only as to Illinois employees of Defendant. See ECF Dkt. No. 1. It was subsequently amended to add additional plaintiffs and allegations of a nationwide collective. See ECF Dkt. Nos. 6 and 14. Defendant's Motion to Dismiss did not raise any jurisdictional challenges to the First Amended Complaint. See ECF Dkt. Nos. 10, 11, 18, and 19.

Prior to the Supreme Court's decision in *Bristol-Myers*, the Seventh Circuit noted that decisions on personal jurisdiction and class certification are "only tangentially related." *Abelesz v. OTP Bank*, 692 F.3d 638, 653 (7th Cir. 2012). So, whether there is a jurisdictional issue here would not seem to have much relevance to the issue of conditional certification. Further, it would seem, contrary to Defendant's assertion that the Seventh Circuit has yet to weigh in on the issue, that our Circuit has, in *Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020), opined on the issue. The *Mussat* decision notes that the *Bristol-Myers* opinion "expressly reserved the question whether its holding extended to federal courts at all." *Id.* at 448. Moreover, the Seventh Circuit took care to distinguish the "coordinated mass action" in *Bristol-Myers* with that of a Rule 23 class action involving absent class members. *Id.* at 447. The Seventh Circuit ultimately held "the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." *Id.* Thus, this Court should give no weight or consideration to Defendant's jurisdictional argument.

F. **The Proposed Notice is Proper but any Dispute as to its Form is Not a Valid Reason to Deny Conditional Certification.**

Plaintiff's proposed notice is proper. Defendants mischaracterize the proposed notice as indicating it would be sent out by undersigned counsel personally, which is ludicrous. Undersigned

8

counsel has no intention of licking enough episodes to fatally poison himself, à la Susan Ross in *Seinfeld*. Plaintiff's proposed notice is not an attempt to mislead, and Plaintiff has no objection to a meet and confer with opposing counsel regarding the proposed notice. Regardless, the form of the proposed notice should not act as a bar against conditional certification.

Defendant suggests a 45-day period is sufficient if notice is sent via email and mail through a TPA. Plaintiffs counter that given the potential size of the population being sent notice, that a 45-day notice period is not sufficient. Again, Defendant has a distinct information advantage as to the number of employees, past and present, for which it has email addresses. Plaintiff suggests that a modicum of information as the percentage of viable email addresses in a meet and confer should occur such that both sides can intelligently agree on a notice period. It is likely that the parties, with the benefit of a meet-and-confer, will be able to agree on a middle ground, e.g., a 90-day notice period, which many courts including those in this district, have authorized. *See, e.g., Ries v. Planesphere, Inc.*, 2016 WL 6277466, at *3 (N.D. Ill. Oct. 27, 2016) ("The opt-in period shall be ninety days."); *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 784 (C.D. Ill. 2015) ("Courts routinely approve a 90– day opt-in period, and the Defendant provides no good reasons not to do so here."); *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 994 (N.D. Ill. 2010) (approving 90 day opt-in period); *Sylvester v. Wintrust Fin. Corp.*, 2013 WL 5433593, at *6 (N.D. Ill. Sept. 30, 2013) (approving 90-day opt-in period); *Prachasitthisak, et al. v. Locke Transportation, Inc.,* et al., 1:20-cv-03483 (N.D. Ill. November 17, 2020) (Tharp, J., granting Plaintiffs' Motion for Conditional Certification and authorizing a 90-day opt-in period).

## CONCLUSION

Plaintiffs have amply shown that notice under §216(b) should be authorized in this case. Defendants' employees should be given notice of this case and the opportunity to opt in to join it. Accordingly, Plaintiffs respectfully request that this Court:

1. Conditionally certify this action as a collective action under 29 U.S.C. §216(b);
2. Order that notice be issued to all support staff who have worked for Defendants during the last three years. Proposed Notice and Opt-In forms are attached hereto as Exhibits A and B.
3. Such other and further relief as this Court deems just and proper.

                Respectfully submitted,

                */s/ Matthew Fletcher*
                One of the attorneys for Plaintiff

Matthew Fletcher (ARDC No. 6305931)
Garfinkel Group, LLC
701 N. Milwaukee Ave
Chicago, IL 60642
312-815-8935
matthew@garfinkelgroup.com