# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Morgan Heller, Joshua Flavin, Grace Baffoe, and Nick Frederickson, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>            Plaintiffs,<br><br>v.<br><br>Curaleaf Holdings, Inc.,<br><br>            Defendant. | Case No. 22 CV 01617<br><br>Honorable Nancy L. Maldonado |

## ORDER

Plaintiffs Morgan Heller, Grace Baffoe, Joshua Flavin, and Nick Frederickson (collectively, "Plaintiffs") bring claims for tip theft under the Federal Labor Standards Act ("FLSA"), the Illinois Wage Payment and Collection Act ("IWPCA"), and the Arizona Wage Act ("AWA") Act against Defendant Curaleaf Holdings, Inc. ("Curaleaf"). (Dkt. 14.)[1] Curaleaf has filed a partial motion to dismiss Heller's IWPCA claim in Count II and Frederickson's AWA claim in Count III. (Dkt. 18.) For the reasons stated in this Order, the Court grants Curaleaf's motion to dismiss in part and denies in part. Heller's IWPCA claim may proceed, but Frederickson's AWA claim is dismissed with prejudice.

## Background

Curaleaf produces, distributes, and sells cannabis products across North America and operates 134 retail cannabis dispensaries across 22 states. (Dkt. 14 ¶¶ 14, 19.) Curaleaf's principal offices are in Massachusetts, but it operates dispensaries in Illinois, Massachusetts, and Arizona. (*Id.* ¶¶ 15–18.)[2]

### I. Allegations Relating to Curaleaf's Northbrook Dispensary

Heller formerly worked at Curaleaf's Northbrook, Illinois location from September 25, 2020, until October 28, 2021. (*Id.* ¶ 23.) As described in the Second Amended Complaint, staffing at Curaleaf's Northbrook location is divided into three general classifications: manager, "agent in charge," and hourly employees. (*Id.* ¶ 24.) While managers are salaried employees, "agents in charge" are hourly employees who have more responsibilities than other hourly employees. (*Id.* ¶ 26.) Other hourly employees at Northbrook—who are not "agents in charge"—are typically called

---

[1] Page numbers are taken from the CM/ECF headers placed at the top of filings.
[2] The following facts are taken from the well-pled allegations in Plaintiffs' Second Amended Complaint, (Dkt. 14), which the Court assumes to be true for the purposes of evaluating Curaleaf's motion to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).

"associates," "team members," or "budtenders". (*Id.* ¶ 26.) Throughout her employment at Curaleaf, Heller was an hourly employee, and would work both in the front of the dispensary, helping assist customers in selecting and purchasing cannabis products, and in the back of the dispensary, stocking and packing product. (*Id.* ¶ 33.)

According to Plaintiffs, in the cannabis industry it is customary for customers to leave tips, and patrons of the Northbrook dispensary would consistently leave tips for employees. (*Id.* ¶ 38.) Initially, during Heller's first month of employment, the managers of the Northbrook dispensary forbid employees from accepting tips. (*Id.* ¶ 39.) Despite this directive, the employees continued to accept tips left by customers. (*Id.* ¶ 41.) Following disputes between management and employees regarding receipt of tips, and disputes between hourly employees on the division of tips, the managers began allowing employees to accept tips around October 2020. (*Id.* ¶ 42.) The managers allowed employees to place a tip jar in the front of the dispensary near the register. (*Id.* ¶ 43.)

The understanding among the hourly employees was that tips would be distributed amongst all hourly employees (regardless of whether they worked in the front or back of the store). (*Id.* ¶ 44.) Contrary to this understanding, management confiscated the tips from the tip jar each day and did not distribute them amongst the hourly employees. (*Id.* ¶ 45.) Plaintiffs allege that Curaleaf confiscated, on average, between $350 and $600 per day (or, approximately $126,000 to $216,000 of cash tips between October 2020 through October 2021). (*Id.* ¶ 47.)

At first, management's refusal to distribute the tips amongst the hourly employees resulted in an increase in cash for the dispensary, and so, beginning in October 2020, management began using the tips to purchase food for the employees. (*Id.* ¶ 53.) This policy, however, meant that employees who were not working on the days food was purchased, or who worked shifts during lunch, received nothing. (*Id.* ¶ 54.) Beginning in September 2021, the managers began to instead distribute approximately twenty dollars of the tip money as "lunch money" to the employees each day. (*Id.* ¶ 55.) This practice, however, lasted for approximately only three days; afterwards, management went back to using the tip money to purchase food. (*Id.* ¶ 56.) Eventually (presumably after October 2021), management began paying the tips to hourly employees directly. (*Id.* ¶ 60.)

## II. Allegations Relating to Curaleaf's Midtown Dispensary

Frederickson is a current "budtender" for Curaleaf at its Midtown dispensary in Phoenix, Arizona and has worked for Curaleaf since May 2021. (*Id.* ¶¶ 121–22.) Unlike the Northbrook dispensary, the Midtown dispensary in Arizona has always had a policy of permitting employees to receive and accept tips. (*Id.* ¶ 124.) Tip jars are placed near the register at the Midtown dispensary, and the "Team Leads" empty the jars and count the money collected each day. (*Id.* ¶ 126.) Team Leads are "employees who possess supervisory authority over multiple hourly employees and whose recommendations as to discipline, staffing, and termination are given consideration by the store managers." (*Id.* ¶ 136.) On average, the Midtown dispensary takes in approximately $1,500 in tips per day. (*Id.* ¶ 126.)

Once the Team Leads have calculated the total money, they send the information to Curaleaf corporate so that the tip money will be paid out to employees through their paychecks.

(*Id.* ¶ 128.) The Midtown dispensary distributes tips collected via a mandatory tip pool, which assigns a percentage to each type of employee at the dispensary: "Budtenders and Leads received a 100% share, inventory received a 50% share, and assistant managers received a 25% share." (*Id.* ¶¶131–33.)

Plaintiffs allege that Curaleaf management and the Team Leads at the Midtown Dispensary have used the tip pool money to balance out the safe and registers when the dispensary is short money (as compared to sales receipts). (*Id.* ¶ 129.) The amount taken typically consists of $3–$5 per day per register drawer and more than $200 per day for the safe balance. (*Id.* ¶ 130.)

Heller initiated this action against Curaleaf on March 28, 2022, (Dkt. 1), and filed the operative Second Amended Complaint on July 19, 2022, adding the additional named Plaintiffs. (Dkt. 14.) Curaleaf has filed this instant motion to partially dismiss Count II and entirely dismiss Count III of the Second Amended Complaint. (Dkt. 18.)

## Discussion

Curaleaf seeks only to dismiss Heller's IWPCA claim and Frederickson's AWA claim. (Dkt. 18.) Ultimately, the Court concludes that Heller has stated a claim under the IWPCA, but that Frederickson has not stated a claim under the AWA. The Court will address Heller and Frederickson's claims in turn.

## I.     Count II – Heller's IWPCA

In support of dismissal, Curaleaf argues that Heller has failed to allege an agreement between Heller and Curaleaf as required for tip theft recovery under IWPCA. (Dkt. 19 at 5–8.) Curaleaf further argues that the FLSA preempts the IWPCA if an agreement is not required under the IWPCA for tip compensation. (Dkt. 19 at 8–10.)

The objective of the IWPCA is "to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Bruger v. Olero, Inc.*, 434 F. Supp 3d 647, 652 (N.D. Ill. 2020) (quoting *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016)). The IWPCA defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2. Section 4 of the IWPCA further states that "Gratuities to employees are the property of the employees, and employers shall not keep gratuities. Failure to pay gratuities owed to an employee more than 13 days after the end of the pay period in which such gratuities were earned constitutes a violation of this Act." 820 ILCS 115/4.1(a).

Illinois courts have held that plaintiffs seeking to recover overdue wages under the IWPCA must allege that they are owed compensation pursuant to an employment agreement. *Chagoya v. City of Chicago*, 992 F.3d 607, 624 (7th Cir. 2021). In other words, the IWPCA is a vehicle for enforcing the terms of an existing contract or employment agreement. *Id.* An employment agreement required for an IWPCA claim, however, does not need to meet the elements of a legally enforceable contract; rather, only "a manifestation of mutual assent on the part of two or more

persons" is required. *Landers-Scelfo*, *Landers-Scelfo*, 827 N.E.2d 1051, 1059 (Ill. App. Ct. 2005). Thus, parties may enter into an employment agreement for the purposes of the IWPCA "without the formalities and accompanying legal protections of a contract." *Id.*

The Court finds that Heller has adequately alleged there was an employment agreement between the employees of the Northbrook dispensary and Curaleaf for the distribution of gratuities. Heller alleges that prior to October 2020, the Curaleaf managers told Heller and other hourly employees that tips were not accepted, by policy. (Dkt. 14 ¶ 40.) After disputing the issue, the manager employees changed course and permitted employees to accept tips. (*Id.* ¶¶ 41–42.). The employees subsequently were allowed to put out a tip jar. (*Id.* ¶ 43.) It is reasonable to infer based on these allegations that the managers, by allowing customers to leave tips, were also allowing the employees to take those tips. Indeed, it would be more implausible to think otherwise. Heller's allegations thus suggest that the managers and the hourly employees affirmatively entered into an agreement whereby hourly employees were permitted to accept gratuities.

Curaleaf is, in essence, disputing the exact terms of the agreement. (Dkt. 27 at 8) ("[T]he placement of a tip jar (and even collecting those tips) does not manifest . . . an agreement as to how and when tips would be distributed, if the tips are shared, who is entitled to potentially shared tips, how those tips would be divided or anything else of that nature.") But as stated above, an employment agreement under the IWPCA is broader than an ordinary, legally enforceable contract. *See Bruger*, 434 F. Supp 3d at 652. Such an agreement may be implicit, and plaintiffs do not need to plead all the various terms of the agreement in order to survive dismissal. *Landers-Scelfo*, 827 N.E.2d at 1059; *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 779 (N.D. Ill. 2015) ("A plaintiff must allege a right to compensation based on a contract or agreement . . . She is not required to allege an entitlement to be paid for specific expenses.") (citations omitted); *Barlett v. City of Chicago*, No. 14 C 7225, 2015 WL 135286, at *3 (N.D. Ill. Jan. 9, 2015) (rejecting defendant's argument that plaintiff failed to plead an IWPCA claim because he had not "explicitly outline[d] that the City would pay him for his time spent traveling to and from home and work, whether as wages or overtime" because "[s]uch specificity is not required to allege a claim under the IWPCA."). The fact that the exact distribution of tips is not clear from the Second Amended Complaint therefore does not warrant dismissal of Heller's IWPCA claim.[3] Accordingly, Curaleaf's motion to dismiss Heller's IWPCA claim is denied.

## II.    Count III – Frederick's Arizona Wage Theft Law

Curaleaf next argues that Frederickson's AWA claim should be dismissed as Frederickson has not stated a claim under the AWA or any other Arizona state law or regulation. (Dkt. 19 at 11–12.) Frederickson clarifies in his responsive briefing that Count II alleges a claim under the AWA, and argues that the Court should treat the tips allegedly due to him as "wages" under the AWA. (Dkt. 23 at 6.)

The AWA defines "wages" as "*nondiscretionary* compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation."

---

[3] As the Court finds that Heller has adequately alleged an agreement for the purposes of the IWPCA, the Court declines to address the issue of FLSA preemption raised by Curaleaf.

Ariz. Rev. Stat. §23-350(7) (emphasis added). The AWA provides employees with a private, civil cause of action against an employee who has failed to pay their wages. Ariz. Rev. State. § 23-355.

Based on the statutory definition of "wages" in the AWA, the Court concludes that Frederickson has failed to state a claim under the AWA. Although both parties fail to provide any caselaw, the Court is persuaded by Curaleaf's reading of § 23-350(7) in its motion and finds that the statutory language of the AWA precludes tips. Tips are, by their very nature, discretionary; customers are not required to give them, and the amount given is up to the individual customer. Being discretionary, tips do not fall within the plain language of the definition of "wages" under the AWA, and the AWA thus does not support a claim for tip theft. As a result, Frederickson's AWA claim is dismissed. As the plain language of the AWA does not permit claims relating to tip theft, the Court finds that any amendment of this claim would be futile. The dismissal of Count III is therefore with prejudice.

## Conclusion

For the foregoing reasons, the Court grants Curaleaf's motion to dismiss in part, and denies Curaleaf's motion to dismiss in part. Heller's IWPCA claim may proceed, but Frederickson's AWA claim is dismissed with prejudice.

Dated: 3/21/24

_Nancy L. Maldonado_

_____
Honorable Nancy L. Maldonado
United States District Court Judge