## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Morgan Heller, Joshua Flavin, Grace Baffoe, and Nick Fredrickson, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>Curaleaf Holdings, Inc.,<br><br>Defendant. | Case No. 22 CV 1617<br><br>Honorable Nancy L. Maldonado |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion by Plaintiffs Morgan Heller, Grace Baffoe, Joshua Flavin, and Nick Fredrickson (collectively, the "Plaintiffs") for conditional class certification under the Federal Labor Standards Act ("FLSA") against Defendant Curaleaf Holdings, Inc. ("Curaleaf"). (Dkt. 30.) For the reasons stated in this Memorandum Opinion and Order, the Court grants Plaintiffs' motion for class certification in part and denies it in part. The Court conditionally certifies a class for Illinois, Arizona, and Massachusetts hourly employees, but denies Plaintiff's request to conditionally certify a class of all Curaleaf hourly employees nationwide. The Court directs the parties to meet and confer about a proposed notice to potential class members that conforms with this Opinion. The parties should file a proposed notice with the Court by July 25, 2024.

### Background

Defendant Curaleaf is a company that produces, distributes, and sells cannabis products and operates 148 dispensaries located across 20 states. (Dkt. 39-3 at 2.)[1] Plaintiffs are all current

---

[1] Page numbers are taken from CM/ECF headers.

or former hourly Curaleaf employees. Morgan Heller was a product specialist who worked at the Curaleaf Northbrook, Illinois location from September 2020 until October 2021. (Dkt. 30-5 at 2.) Grace Baffoe was a product specialist who worked at the Curaleaf Skokie, Illinois location from August 2020 until December 2022. (*Id.* at 8.) Joshua Flavin worked on the recreational side (as opposed to the medical side) of the Curaleaf Oxford, Massachusetts dispensary from September 2019 until March 2022. (*Id.* at 5.) Nick Fredrickson currently works as a product specialist at the Curaleaf Midtown, Arizona dispensary and has been employed there since May 2021. (*Id.* at 13.)

Plaintiffs allege that Curaleaf has engaged in tip theft from hourly employees, and they seek to conditionally certify a class under the FLSA for all hourly Curaleaf employees, across all Curaleaf locations, who have not been fully compensated for their tips. (Dkt. 14 ¶ 139; Dkt. 30.) Plaintiffs have each submitted a declaration stating that management at their respective locations engaged in tip confiscation by not distributing the tip money received by hourly employees. (Dkt. 30-5.) Plaintiffs' declarations describe different forms of tipping practices at each location.[2] The Court will summarize each declaration, in brief, below.

## I.      Heller's Declaration

Heller declares that, in October 2020, Northbrook, Illinois dispensary management began allowing employees to accept tips and placed a tip jar near the point of sale. (*Id.* at 3.) Heller states that Northbrook management confiscated the tips and used the money to purchase lunches for dispensary employees, rather than distributing them to employees. (*Id.*) This practice continued until September 2021, when dispensary management began giving each hourly employee "lunch money" of approximately $10 per day. (*Id.*) Heller also declares that she underwent training at the

---

[2] Plaintiffs submitted additional supplemental declarations from hourly employees at various Curaleaf dispensaries in Illinois. (Dkt. 48.) The supplemental declarations (objected to by Curaleaf) describe tipping practices at Curaleaf locations in Illinois similar to those described by the named plaintiffs. They are, therefore, cumulative, and the Court will not consider them in its analysis.

Melrose Park dispensary in Illinois, and during her training, she learned that management at Melrose Park also confiscated tips. (*Id.*)

## II.    Baffoe's Declaration

Baffoe states that when she was first hired, she underwent training at the Morris and Deerfield, Illinois dispensaries, where she personally observed management collecting tips received from customers and donating them to charity, rather than distributing them to the employees. (*Id.* at 8.) After her training, Baffoe went to the Skokie, Illinois location, where she claims management used tip money received from customers for a "take a penny leave a penny" fund, from which customers could draw money when they were short on cash for a purchase. (*Id.* at 9.)

Baffoe also declares that the Skokie management team represented to employees that the tip money would be used to purchase lunches for dispensary employees from August 2020 to May 2021. (*Id.*) Management, however, only occasionally purchased lunches between September 2020 and May 2021, and according to Baffoe, "it was not clear if tip money was being used and the amount of lunches purchased did not correspond or equate to the value of tips being collected." (*Id.*)

On May 17, 2021, a Skokie dispensary manager informed dispensary employees that the previously collected tip money would be distributed but that there was only $1,542 in tip money held by the dispensary; Baffoe estimates, however, that the dispensary was taking in about $100 per day from October 2020 to May 2021. (*Id.* at 9–10.) After the manager's announcement, Baffoe learned from an agent-in-charge that management had been using the tip money to balance store registers and to refill the store's petty cash fund (to buy items for the store and stock registers with small denomination bills). (*Id.* at 10.) Despite the May 2021 announcement, Skokie management

did not pay out the tip money, stating they were forbidden from doing so because the employees were unionizing, and that a pay-out could be construed as a bribe. (*Id.*) The tip money was finally paid out in October 2021.

### III.    Flavin's Declaration

Flavin declares that prior to November 2021, the Oxford, Massachusetts dispensary management did not permit employees to keep tips left by customers. (*Id.* at 5.) Nevertheless, customers still left employees tips, and Oxford management directed employees to turn over this tip money to the store so it could be donated to charity. (*Id.*)

After November 2021, the Oxford dispensary began permitting tips, and implemented a mandatory tip pool to be split between the eight customer-facing employees and two team leads. (*Id.* at 6.) Flavin and other customer-facing employees typically receive between $200 and $300 tips biweekly, which adds up to total store tips ranging between $1,600 and $2,400 biweekly, to be divided amongst the ten employees. (*Id.*) Flavin and the other employees in the tip pool, however, would receive, at most, $100 in tips biweekly, with no explanation for this alleged discrepancy. (*Id.*) Flavin further declares that "[t]he Oxford dispensary operated under the same policies and procedures as other Massachusetts dispensaries." (*Id.*)

### IV.    Fredrickson's Declaration

Fredrickson's declaration states that the Midtown, Arizona dispensary allows the receipt of tips, and that collected tip money is counted at the end of each day from tip jars placed at the point of sale. (*Id.* at 13–14.) Before tips are counted, the tip money is used to balance the safe and registers if they are short. (*Id.* at 14.) The tip count is then sent to corporate to be divided via a tip pool and paid out in employees' regular paychecks. (*Id.*) The tip pool is shared among product specialists, leads (who Curaleaf considers managements for the purposes of unionization voting),

and assistant managers. (*Id.*) According to Fredrickson, "[n]ew employees who receive tips are required to contribute them to the tip pool but are ineligible to receive money from the tip pool for their first five shifts." (*Id.*) Fredrickson further declares that, based on his involvement in unionizing Curaleaf's workforce, he has learned that "Midtown's tip policies and procedure are the same or substantially similar to those at other area dispensaries." (*Id.*)

## V.     Curaleaf's Evidence

In opposition to the Plaintiffs' motion for conditional certification and supporting declarations, Curaleaf has submitted its own declarations from Curaleaf employees, including: Carly Cole, the Human Resources Generalist for Curaleaf Holdings, Inc.; Keevin Cox, the Labor Relations Manager for Curaleaf Holdings, Inc.; and Sarah Descoteaux, the Vice President of Human Resources Operations for Curaleaf Holdings, Inc. (Dkts. 39-1–39-3.) Curaleaf has also submitted its Tipping Pool Overview & Procedures Policy (hereinafter, the "February 2022 Policy"), which was effective as of February 1, 2022. (Dkt. 39-3 at 5.) The February 2022 Policy requires that all unsolicited tips must be pooled and provides that a valid tip pool includes all hourly team members. (*Id.*) Cole and Cox both declare that, prior to February 2022, Curaleaf's only official tipping policy was that tips were not permitted. (Dkt. 39-1 at 1; Dkt. 39-2 at 2.) Descoteaux declares that the February 2022 Policy was promulgated because Curaleaf's acquisition of other dispensaries "resulted in a number of different tipping practices in place across the company." (Dkt. 39-3 at 2.)

Cox explains in his declaration that, due to Curaleaf's numerous acquisitions and the fact that each of these dispensaries had their own different policies and practices, "many Curaleaf dispensaries operated with inconsistent policies and practices, including inconsistent tip practices." (Dkt. 39-2 at 2.) For example, Curaleaf's acquisition of Greenhouse (GHG Management, LLC)

included the now-Curaleaf dispensaries in Northbrook, Skokie, Mokena, Morris, Deerfield, Melrose Park, and Westmont, Illinois, and pre-existing Greenhouse tip practices continued at those locations for some time following acquisition. (*Id.*) Even then, Cox declares that the Greenhouse tipping practices were not uniform across former Greenhouse dispensaries. (*Id.*) Although cross-training helped spread tipping practices among the Greenhouse locations prior to Curaleaf's acquisitions, each store also developed variations on the way the store handled tips. (*Id.*) Moreover, Cox declares that Greenhouse tipping practices were limited to only former Greenhouse locations that were acquired by Curaleaf. (*Id.*)

## VI. Procedural History

Heller initiated this action against Curaleaf on March 28, 2022, (Dkt. 1), and filed the operative second amended complaint on July 19, 2022, adding the additional named Plaintiffs. (Dkt. 14.) Plaintiffs seek conditional class certification under FLSA for tip theft, and additionally bring claims under the Illinois Wage Payment and Collection Act and the Massachusetts Wage Act. (*Id.*)[3] The Court allowed the parties to begin conducting discovery on July 20, 2022. (Dkt. 16.)

On February 1, 2023, Plaintiffs filed the instant motion for conditional class certification. (Dkt. 30.) After the motion for conditional class certification was fully briefed, Plaintiffs filed a motion to include supplemental declarations in support of conditional certification, which the Court granted. (Dkt. 48.) Curaleaf subsequently filed a motion to reconsider the Court's grant of Plaintiff's request to file supplemental declarations, which the Court granted, permitting Curaleaf to respond to Plaintiffs' motion. (Dkts. 50–51.) As indicated *supra* at note 2, however, the Court finds that it can decide Plaintiffs' motion without reference to the supplemental declarations.

---

[3] Previously, Fredrickson also brought a claim under the Arizona Wage Act against Curaleaf. (Dkt. 14 ¶¶ 183–97.) Curaleaf moved to dismiss this claim, (Dkt. 10), and the Court granted Curaleaf's motion, dismissing the Arizona Wage Act claim with prejudice. (Dkt. 55.)

On November 3, 2023, the parties reported that they had exchanged written discovery, but requested that the Court stay further discovery pending resolution of Curaleaf's motion to dismiss and Plaintiffs' motion for conditional certification. (Dkt. 46.) The Court granted the parties' request, struck the fact discovery cut-off, and ordered the parties to submit a proposed revised discovery schedule following a ruling on the motion to dismiss and motion for conditional certification. (Dkt. 47.)

## Legal Standard

Under the FLSA, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). Section 216(b) of the FLSA permits employees "to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 848 (N.D. Ill. 2017) (quoting *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010)). "District courts have broad discretion in managing collective actions under the FLSA." *Id.*

Generally, FLSA actions in this district follow a two-step process. *Id.* Step one is the conditional certification stage, which is "a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Id.* (quoting *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011)). Step two occurs after the opt-in process and discovery are completed and is when the district court reevaluates conditional certification in order to determine if the named and opt-in plaintiffs are sufficiently similar such that the action should proceed. *Id.* at 849.

At step one, the conditional certification stage, plaintiffs have the burden of demonstrating that they and other potential claimants are similarly situated. *Id.* At 848. The "similarly situated" standard is a lenient one; FLSA plaintiffs need only make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 752 (N.D. Ill. 2010) (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)); *see also Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017). To do so, plaintiffs cannot rely solely on allegations of the complaint, and instead, "must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Vazquez v. Ferrara Candy Co*., No. 14 C 4233, 2016 WL 4417071, at *5 (N.D. Ill. Aug. 19, 2016); *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 C 7312, 2016 WL 1043429, at *2 (N.D. Ill. Dec. 22, 2016). "The court does not make merit determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Bergman v. Kindred Healthcare Inc.*, 949 F.Supp.2d 852, 855–56 (N.D. Ill. 2013).

Although lenient, conditional certification is not automatic, and plaintiffs must "demonstrate similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the [relevant law] generally must be present." *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-CV-10447, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016). "A *unified* policy, plan, or scheme, though is not necessarily required to satisfy the similarly situated requirement, especially if a collective action would promote judicial economy because there is otherwise an

identifiable factual or legal nexus." *Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 787 (N.D. Ill. 2007) (emphasis in original).

## Discussion

Plaintiffs are at step one of the FLSA collective action process: conditional certification. They claim that Curaleaf's policy of refusing to distribute tips to its hourly employees violates the FLSA, and they seek leave to send the following notice to potential opt-in plaintiffs:

> All persons who have been employed as hourly employees by Defendant, at any time between March 28, 2019 and the present. This includes both current and former hourly Curaleaf employees, who work or have worked at any of the Defendant's 147 retail dispensaries within the statutory period, three years prior to the date of the filing of this action through the date of judgment, who were not fully compensated with payment of earned tips.

(Dkt. 30 at 1.)

Curaleaf raises several objections to the conditional certification of Plaintiffs' proposed class. First, Curaleaf argues that although courts usually impose a lenient standard at step one of FLSA collective actions, the Court should impose an intermediate standard as the parties have already engaged in discovery. (Dkt. 39 at 13–14.) Second, Curaleaf contends that, in any case, conditional certification of a nationwide class would be inappropriate as Plaintiffs have failed to demonstrate a common unlawful policy that would make the Plaintiffs and the potential claimants similarly situated. (*Id.* at 15–20.) Third, Curaleaf argues that conditional class certification of a nationwide class may raise personal jurisdiction issues given the Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255 (2017). (*Id.* at 21.) Finally, Curaleaf opposes several specific aspects of Plaintiffs' proposed notice. (*Id.* at 21–22.) The Court will evaluate each of Curaleaf's arguments in turn.

## I.    Conditional Certification Standard

The Court begins by addressing the parties' dispute over the proper standard for assessing Plaintiff's conditional class certification motion. Some courts have applied an intermediate standard where parties have already begun discovery. *See, e.g.*, *Steger v. Life Time Fitness*, Inc., No. 14-CV-6056, 2016 WL 245899, at *2 (N.D. Ill. Jan. 21, 2016) ("However, when limited discovery has been completed as is the case here, the lenient standard applied at the first stage is heightened to an intermediate standard more stringent than the first-step certification standard but more lenient than the second-step decertification standard."); *Bunyan v. Spectrum Brands, Inc*., No. 07–CV–0089, 2008 WL 2959932, at *4 (S.D. Ill. Jul. 31, 2008) (applying intermediate standard where substantial discovery had taken place regarding the issue of certification).

The Court concludes, however, that Plaintiffs should be required to make only a "modest factual showing" in support of their motion for conditional certification. Although the parties have engaged in discovery, their discovery has been fairly limited. On November 3, 2023, the parties reported that they had exchanged written discovery, but since then, all further discovery has been stayed pending the Court's resolution of the motion to dismiss and motion for conditional certification. In those cases where courts have applied the intermediate standard, the parties had completed substantially more discovery than the limited amount done here. *See, e.g., Steger*, 2016 WL 245899, at *2 (applying intermediate standard where parties completed discovery on class certification issues); *Osterholt v. Corepower Yoga, LLC*, No. 16 CV 5089, 2017 WL 2180483, at *2 (N.D. Ill. May 18, 2017) (applying intermediate standard where depositions, multiple declarations, and over 10,000 documents had been produced); *Hunter v. WirelessPCS Chicago LLC*, No. 18 CV 980, 2022 WL 864533, at *4 (N.D. Ill. Mar. 23, 2022) (applying intermediate standard where parties had conducted written and oral discovery resulting in a significant number

of discovery disputes). The Court thus finds that the traditional, lenient standard for conditional certification is appropriate here.

## II.        Common Policy or Practice

Having determined that the "modest factual showing" standard should apply, the Court will now address whether Plaintiffs have adequately shown that Plaintiffs and any potential claimants are subject to a common, unlawful policy or practice. *Molina*, 566 F. Supp. 2d at 786 ("To proceed on a §216(b) collective action, there must be similarly situated employees, which includes being subjected to a common policy").

According to Plaintiffs, their evidence demonstrates that they and the potential claimants have been subject to a common policy of tip theft, albeit through varying means. (Dkt. 30 at 5–6.) Plaintiffs further argue that the February 2022 Policy contains a provision that violates the FLSA and is thus another unlawful common policy that supports conditional certification. (*Id.* at 6, 9.) Finally, Plaintiffs contend that the fact that Curaleaf hourly employees are subject to the same Curaleaf employee handbook, official tipping policy, and common training programs makes it "reasonable to infer that the common policies and procedures observed in each region by each Plaintiff were in fact identical across all regions going back at least as far as November 1, 2020." (*Id.* at 3.)

In response, Curaleaf argues that Plaintiffs' supporting declarations are inadmissible and, in any case, demonstrate only that the alleged tip theft varied greatly between locations, which undermines their argument that the class members were subject to a common policy. (Dkt. 39 at 14–19.) Curaleaf asserts, in a somewhat underdeveloped manner, that Plaintiffs cannot claim that tip theft itself is a policy. (*Id.* at 16.) Insofar as the Court understands the argument, Curaleaf appears to assert that tip theft—as Plaintiffs describe it—is inherently variable such that a policy

of tip theft does not meet the purported "requirement that a common, unifying policy or practice must exist." (*Id.* at 16.) Lastly, Curaleaf contends that its own evidence shows that different Curaleaf dispensaries operate in a patchwork fashion due to Curaleaf's acquisition of dispensaries that carried over their pre-existing tip policies and practices during the transition period. (*Id.* at 16, 8–10.)

Before delving into the substance of the parties' dispute over the common policy or practice requirement, the Court will first address Curaleaf's assertion that Plaintiffs' declarations are inadmissible. There is a split amongst courts in this District on whether evidence contained within a declaration must be admissible for the purposes of conditional certification. *Compare Boyd v. Alutiqq Glob. Sols., LLC*, No. 11-CV-0753, 2011 WL 3511085, at *5–6 (N.D. Ill. Aug. 8, 2011) (finding inadmissible hearsay evidence could not support motion for conditional certification) *with Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 C 7312, 2016 WL 7409909, at *3 (N.D. Ill. Dec. 22, 2016) (permitting use of hearsay evidence to support motion for conditional certification). Courts that have permitted the use of hearsay evidence in support of motions for conditional certification "reason that 'a strict application of the Federal Rules of Evidence does not comport with the court's understanding of relative evidentiary burdens imposed under the two-stage certification approach,' and that the 'most reasonable approach to the respective evidentiary burdens of the plaintiff during the two stages is one that requires a stricter standard of proof in the second stage." *Ruffolo v. LaSalle Grp., Inc.*, No. 18 C 3305, 2019 WL 978659, at *3 (N.D. Ill. Feb. 28, 2019) (quoting *Pieksma*, 2016 WL 7409909, at *3). Given that courts should not evaluate the merits of a FLSA claim or delve into fact-based inquiries during the conditional certification stage, the Court will follow the approach of decisions like *Ruffolo* and permit inadmissible evidence at step one. *See id.*; *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at

*3 (N.D. Ill. Jan. 20, 2009); *Anyere v. Wells Fargo, Co*., No. 09 C 2769, 2010 WL 1542180, at *2 n. 1 (N.D. Ill. Apr. 12, 2010).

Pivoting now to the parties' main dispute, the Court concludes that Plaintiffs have failed to demonstrate that the conditional class should span all Curaleaf locations. Courts have the discretion to narrow a conditional class if it appears that the scope of the proposed class is not warranted. *Arango v. Landry's Inc*., No. 12 C 9354, 2013 WL 12323615, at *3–4 (N.D. Ill. May 7, 2013) ("[C]ourts have nonetheless exercised their discretion to narrow overly broad class definitions or limit discovery accordingly"). For example, in *Collazo v. Forefront Education, Inc.*, the court narrowed the conditional certification of a proposed class that originally included employees at the defendants' locations in both Illinois and Florida, to instead only include employees at the defendants' Illinois location because none of the proposed class representatives worked in Florida or had any personal knowledge of the workplace environments in Florida. No. 08-CV-5987, 2010 WL 335327, at *2 (N.D. Ill. Jan. 28, 2010). Likewise, here, Plaintiffs' declarations only relate to the three states in which Plaintiffs are employed: Illinois, Massachusetts, and Arizona. Plaintiffs do not discuss how tips are handled in any other state or suggest that they have knowledge of practices in locations outside of Illinois, Massachusetts, and Arizona. Moreover, the supplemental declarations that Plaintiffs submitted were all from hourly employees who work at Curaleaf dispensaries in Illinois, and thus do not supply the missing evidence.

Rather than providing factual support of corporation-wide practices, Plaintiffs ask the Court to infer that the common policy of tip confiscation occurred at all of Curaleaf's locations from the existence of Curaleaf's corporate-wide employee handbook, tipping policy, and training programs. But the Court has no basis for assuming that other stores outside of Illinois, Arizona, and Massachusetts have engaged in tip theft whatsoever. While Curaleaf's employee materials

support the fact that hourly employees within the Curaleaf organization are similarly situated in terms of job responsibilities and duties, that evidence is immaterial to the second component of the similarly situated analysis: whether a common, unlawful policy exists that would create a factual nexus between the named Plaintiffs and any opt-in plaintiffs. In short, Plaintiffs are asking the Court to conditionally certify a nationwide class based on pure speculation. The Court thus denies Plaintiff's motion for conditional certification of a class that includes all past and present Curaleaf hourly employees.

Nevertheless, the Court finds that conditional certification of a class limited to hourly employees working at Illinois, Massachusetts, and Arizona dispensaries is appropriate. Specifically, the Court concludes that Plaintiffs have adequately shown that the hourly employees in Illinois, Massachusetts, and Arizona are subject to a common policy of dispensary management refusing to distribute tip money to hourly employees. All four Plaintiffs submitted declarations in which they state that the management at their respective stores engaged in some form of tip confiscation. Baffoe averred in her declaration that she personally observed similar types of tip confiscation occurring at two other Illinois locations. (Dkt. 30-5 at 8.) Flavin and Fredrickson both declared that other locations within Massachusetts and Arizona had the same policies and practices as the locations where they worked. (*Id.* at 6, 14.) These statements suggest that the common policy was at least diffused throughout the three states that Plaintiffs represent. *See Anyere*, 2010 WL 1542180, at *2 (granting conditional certification of class that included credit managers employed by the defendant in Illinois and Indiana even though the challenged policy might be "restricted to only certain supervisors within Illinois and Indiana" because "plaintiffs represent credit managers from several different branches, districts, and regions"). Further, one of the cases cited by Curaleaf in opposition to Plaintiffs' motion for conditional certification adopted a similar approach to the

one the Court takes here. *See Jibowu v. Target Corporation*, 492 F. Supp. 3d 87, 125 (E.D.N.Y. 2020) (holding that "misclassification due to variation in unofficial, [de facto] policies implemented at individual stores" could not support certification of nationwide class but granting conditional certification of a class encompassing the defendant's store locations for which plaintiffs provided firsthand evidence of the de facto policy of misclassification).

A few oft-repeated principles persuade the Court that Plaintiffs' allegations are sufficient under the lenient conditional certification standard. First, courts have recognized that a common policy for the purposes of conditional certification does not need to be a written or formal policy. *See Blakes v. Illinois Bell Tel. Co.*, No. 11 CV 336, 2011 WL 2446598, at *5 (N.D. Ill. June 15, 2011) ("[Plaintiffs] assert that AT&T Illinois enforces an unwritten de facto policy that discourages employee from seeking compensation for work performed outside their shift and that forces them to perform uncompensated work off-the-clock. Courts in this district 'regularly allow' plaintiffs to pursue collective actions under the FLSA in these circumstances.") (internal citation omitted). Here, the Plaintiffs allege a de facto policy: Curaleaf's refusal to distribute tips to employees. Given the informal nature of a de facto policy, variations are expected, and the uniformity of the policy would likely not be as apparent as with a written company-wide document or official procedure.

Second, courts have held that plaintiffs can demonstrate a common policy or practice for the purposes of conditional certification, even if individual variations are present, so long as the unlawful practice was promulgated by "more than a rogue manager or two." *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 935 (N.D. Ill. 2008); *Haugen v. Roundy's Illinois, LLC*, No. 18 C 7297, 2019 WL 12056344, at *3 (N.D. Ill. Dec. 13, 2019) ("Whatever a company's official documents state, plaintiffs can meet the requirements of conditional certification by showing 'more

than a rogue manager or two' subjected employees to FLSA-violating practices.") (internal citation omitted); *Blakes*, 2011 WL 2446598, at *5. Each of the four Plaintiffs worked or works at a different dispensary, under different management, and each has submitted a declaration in which they aver that the hourly employees' tips at their respective locations were confiscated by management. Plaintiffs' evidence thus suggests that the practice of not distributing tips to hourly employees extended beyond individual supervisors and amounted to a more widespread practice within the Curaleaf network.

Curaleaf's evidence that the variations in the alleged tip theft are a result of hold-over practices from Curaleaf's acquisition of particular dispensaries does not persuade the Court to deny conditional certification or to narrow the proposed class even further. As stated above, the Court is applying the traditional, lenient standard to conditional certification, and at this stage, the Court is not even required to "specifically consider opposing evidence presented by a defendant." *Nicks*, 265 F. Supp. 3d at 849. The court's opinion in *Curless v. Great Am. Real Food Fast, Inc.* illustrates the low bar for conditional certification even when differences exist between various stores or locations. In *Curless*, the plaintiffs were servers at various restaurants owned by the defendant who alleged that the defendant had a nationwide policy of failing to compensate tipped employees for non-tipped work. 280 F.R.D. 429, 432–33 (S.D. Ill. 2012). In response, the defendant argued that the plaintiffs failed to state a common policy as each individual restaurant determined their own requirements for non-tipped work. *Id.* at 433–34. The *Curless* court rejected this argument, stating that: "Great American is the owner of all of the restaurants and it is alleged their policy is to require servers to perform non-tipped work. The fact that each restaurant determined what the details of the work would be does not defeat the alleged common plan or policy at this point." *Id.* In coming to this conclusion, the court considered the fact that the plaintiffs were multiple employees, from

multiple locations, and that they had submitted multiple affidavits of servers being required to do non-tipped work. *Id.* As Plaintiffs in the instant action represent multiple Curaleaf locations and have submitted declarations that show that the alleged common policy occurred across locations, the Court similarly concludes that Plaintiffs have made the "minimal showing" required at the conditional certification stage. *See also Howard*, 2009 WL 140126, at *5 ("[T]he court looks for no more than a 'minimal showing' of similarity.").

Once the parties reach the second stage of certification, the Court can determine whether division of the proposed class into subclasses or decertification would be justified. Indeed, courts in this District emphasize that concerns about individualized inquiries should not be a basis for denying a motion for conditional certification at stage one. *Blakes*, 2011 WL 2446598, at *5 ("The possibility that the claims will eventually require a more individualized inquiry does not preclude sending a notice of their claims at this stage."); *Allen v. City of Chicago, No. 10 C 3183*, 2013 WL 146389, at *8–9 (N.D. Ill. Jan. 14, 2013). The Court is not blind to the fact that manageability and individual circumstances may ultimately become a focus in this action. But relevant caselaw suggests that the differences among the dispensary locations' tipping practices and specifically, the question of whether they would require the Court to engage in onerous individualized assessments, should be addressed at the second stage of the certification process. For that reason, the Court holds that Plaintiffs may send notices to potential plaintiffs in Arizona, Illinois, and Massachusetts.

In closing, the Court addresses Plaintiffs' argument that Curaleaf's February 2022 Policy violates the FLSA and therefore constitutes another unlawful common policy. Specifically, Plaintiffs argue that the February 2022 Policy violates the FLSA because it provides that "[e]mployees must be active on payroll at the time of payout." (Dkt. 30 at 6) (quoting Dkt. 30-4 at 2.) Plaintiffs claim that the February 2022 Policy means that an employee who is terminated in the

middle of a pay period, and who has worked and earned tips over the course of a full week, will have surrendered their tips to the tip pool, but will not be given their share when the tip pool is paid out on the next pay period. (*Id.*) Curaleaf disputes that the February 2022 Policy would cause this result or in any way violates the FLSA. (Dkt. 39 at 19–20.)

Although the Court refrains from commenting on the lawfulness of the February 2022 Policy, the Court concludes that conditional certification of Plaintiffs' proposed class cannot be predicated on the February 2022 Policy. Neither the declarations of Plaintiffs, nor the supplemental declarations, make any mention of tips confiscated pursuant to the February 2022 Policy. Further, none of the declarants claim that they left in the middle of a pay period. Indeed, among the named Plaintiffs, only Flavin could have conceivably been harmed by the alleged FLSA violation, as the remaining Plaintiffs left Curaleaf before the February 2022 Policy was implemented, or still work at Curaleaf. Plaintiffs must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were *victims* of a common policy or plan that violated the law." *Smallwood*, 710 F. Supp. 2d at 752 (emphasis added). While a plaintiff need not definitively prove that the FLSA was violated at this stage, none of the named Plaintiffs made any showing whatsoever that they were victims of the February 2022 Policy. *See Vazquez*, 2016 WL 4417071, at *5 (plaintiffs "must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law."). The Court therefore finds that Plaintiffs could not be similarly situated to any other opt-in plaintiff based on the February 2022 Policy. *See Heuberger v. Smith*, No. 3:16-CV-386-JD-JEM, 2017 WL 3923271, *4 (N.D. Ind. Sept. 7, 2017) (holding that plaintiff failed to make "modest factual showing that he and the other employees to whom notice is to be sent were victims of a common policy or plan that violated the law" because

no crew uniform deductions were taken from his paycheck pursuant to the allegedly unlawful uniform fee deduction policy); *Weil v. Metal Techs., Inc*., No. 215CV00016JMSDKL, 2016 WL 286396, at *8 (S.D. Ind. Jan. 25, 2016) (denying conditional certification of FLSA claim based on unpaid lunch breaks as "Plaintiffs themselves have made no showing that they have been harmed by that policy and thus could not be similarly situated to any class members"); *Williams v. Molina Healthcare, Inc*., No. 18 C 5522, 2020 WL 13665599, *9 (N.D. Ill. Mar. 27, 2020) ("A separate but equally-dispositive problem here is that plaintiff has proposed a collective class that excludes herself. It is difficult to see how plaintiff can be similarly situated to or adequately represent a collective class of which she is not a member.").  The Court is willing to accept some variations at this stage of class certification, but reliance on the February 2022 Policy is simply too far afield.

### III.  Personal Jurisdiction

Next, the Court will address Curaleaf's argument that conditional certification should be denied because the Supreme Court's decision in *Bristol-Myers* calls into question whether a court has personal jurisdiction over opt-in plaintiffs that reside outside the home state of the named plaintiffs. (Dkt. 39 at 21) (citing 582 U.S. 255 (2017)). In *Bristol-Myers*, the Supreme Court held that California courts lacked specific personal jurisdiction in a mass action, consolidated pursuant to California law, over non-California resident plaintiffs who had not purchased, used, or been injured by the defendant's product in California. 582 U.S. at 264–65, 268–69. In the wake of *Bristol-Myers*, courts have split on whether the decision should apply to a nationwide collective action filed in federal court under a federal statute such as FLSA. *See generally Parker v. IAS Logistics DFW, LLC*, No. 20 C 5103, 2021 WL 170788, at *2 (N.D. Ill. Jan. 19, 2021) (describing split).

In *Mussat v. IQVIA, Inc.*, the Seventh Circuit held that "the principles announced in *Bristol-Myers* do not apply to the case of a nationwide class action filed in federal court under a federal statute," and that in the Rule 23 context, "the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." 953 F.3d 441, 443, 447 (7th Cir. 2020). The Seventh Circuit reiterated that the *Bristol-Myers* decision "expressly reserved the question whether its holding extended to federal courts at all." *Id.* at 448. A least one court in this District has subsequently questioned, without deciding, whether the *Mussat* decision, which discussed Rule 23 class actions, should also apply to FLSA collective actions. 2021 WL 170788, at *3 ("The language in *Mussat* distinguishing nationwide Rule 23 class actions filed in federal court under federal law from a mass-tort action based in state law appears to indicate that the Seventh Circuit would agree that *Bristol-Myers* also does not apply here—provided that class actions and collective actions are deemed to be sufficiently similar for the personal-jurisdiction analysis.").

Rather than resolving the above question at the outset, courts within the Seventh Circuit have concluded "that the personal-jurisdiction analysis should take place after a ruling on the motion for conditional certification." *Id.* at *4; *Walker v. Walgreens Specialty Pharmacy, LLC*, No. 21 CV 5780, 2023 WL 5334609, at *7 (N.D. Ill. Aug. 18, 2023) (declining to limit scope of FLSA collective action until after conditional certification); *Kessler v. Casey's Gen. Stores, Inc.*, No. 22-CV-02971-SPM, 2023 WL 5000276, at *3 (S.D. Ill. Aug. 4, 2023) (collecting cases). *But see Luna Vanegas v. Signet Builders, Inc.*, No. 21-CV-54-JDP, 2023 WL 4926237, at *9 (W.D. Wis. Aug. 2, 2023) (initially declining to resolve personal jurisdiction argument raised in response to motion for conditional certification as premature because "[t]he purpose of conditional certification is to determine whether the proposed collective is similarly situated, not to decide whether it has

20

jurisdiction over non-parties to the lawsuit" and "[d]efendants generally cannot preemptively prevent a plaintiff from joining a suit due to lack of jurisdiction"), *amended sub nom. Vanegas v. Signet Builders, Inc.*, No. 21-CV-54-JDP, 2023 WL 5663259, at *4 (W.D. Wis. Sept. 1, 2023) (amending prior order to decide that court has personal jurisdiction over nationwide FLSA collective action and staying action pending the Seventh Circuit's resolution of defendant's interlocutory appeal on personal jurisdiction issue).

The Court concludes that it would be best to conduct the personal jurisdiction analysis after potential class members have opted-into the class. The Court therefore rejects this argument as grounds for denying Plaintiffs' motion for conditional certification.

## IV.    Notice

Finally, the Court will address the parties' dispute over the proposed notice. Curaleaf argues that the proposed notice is improper because Plaintiffs do not plan on using a third-party administrator to disseminate the notice, the notice does not provide sufficient information and must be re-balanced, Plaintiffs propose disseminating the notice via text message, and the proposed notice period is unreasonable. (Dkt. 39 at 21–22.)  Unsurprisingly, Plaintiffs disagree. (Dkt. 42 at 8–9.) The parties, however, both state that they believe that a meet-and-confer on this issue would be mutually beneficial. (Dkt. 39 at 21; Dkt. 42 at 9.) Especially as this Opinion has already cabined the scope of the proposed notice, the Court finds that a meet-and-confer first would be preferable and directs the parties to do so before updating the Court with a revised proposed notice that aligns with this Opinion and the parties' discussions.

## Conclusion

For the foregoing reasons, Plaintiffs' motion for conditional certification is granted in part and denied in part. The Court denies Plaintiffs' motion to conditionally certify a nationwide class

of hourly Curaleaf employees but grants conditional certification of a class limited to hourly Curaleaf employees in Illinois, Arizona, and Massachusetts. Further, the Court directs the parties to meet and confer about a proposed notice that conforms with this Opinion. Parties should update the Court with their proposed notice by July 25, 2024.

ENTERED: 6/27/24

_Nancy L. Maldonado_

_____

Nancy L. Maldonado

United States District Court Judge